B. SIEGEL CO. *v.* WAYNE CIRCUIT JUDGE.

1. LANDLORD AND TENANT — LEASE — CONSTRUCTION — EXTERIOR OF BUILDING—ALTERATIONS OR CHANGES BY LESSEE.

Under a lease permitting the tenant to make changes in the leased building not impairing the structural safety thereof, providing that any change in the exterior should be subject to approval of the landlord, the right to cut an opening in one of the walls to another store, which the tenant was occupying, was subject to the approval of the lessor, and it was the apparent intention of the parties to restrict the alteration of any of the enclosing walls, except with the lessor's approval.

2. SAME.

No contrary intent was indicated by a preceding clause in the contract imposing on the lessee the duty of painting the exterior when necessary to keep the building in clean and sightly condition; in the event of removing the adjacent building the obligation to paint would extend to the exposed part; hence that wall or portion of the structure would be a part of the exterior of the building.

183 Mich.—10.

3. SAME—CONTRACTS.

Provisions inserted in a lease at the instance and for the benefit of the lessor, in language of its own choosing, are to be construed most strongly against such lessor. Between two constructions, each probable or possible, one making a contract reasonable and fair, the other unjust or unreasonable, the preference is to the equitable or reasonable interpretation.

4. SAME—INJUNCTION.

The summary remedy of injunction is only granted on strictly equitable grounds, and where complainant averred that proposed changes of the leased store building tended to weaken the structure and increase the fire risk, defendant denying the allegations in its answer, and both parties supporting their contentions with affidavits of experts, the pleadings presented an issue of fact to be tried and determined on the evidence.

5. SAME—MANDAMUS—INJUNCTION—DISSOLUTION.

On mandamus, the exercise of the discretion of the chancellor will not be reviewed if the record shows that his award of a temporary injunction was supported by evidence tending to raise an issue to be disposed of on the hearing; no decisive issue of law being presented by the record.

McALVAY, C. J., and BROOKE and KUHN, JJ., dissenting.

Mandamus by the B. Siegel Company against George P. Codd, one of the circuit judges for the county of Wayne, to compel respondent to vacate an order granting a preliminary injunction in a suit instituted against relator as defendant. Submitted October 13, 1914. (Calendar No. 26,446.) Writ denied December 18, 1914.

*Stevenson, Carpenter, Butzel & Backus,* for relator.

*Donnelly, Lyster, Brennan & Munro* and *H. E. Spalding,* for respondent.

STEERE, J. This is an application for a writ of mandamus to compel the vacation by respondent of a preliminary injunction issued in a suit now pending

in the Wayne county circuit court in chancery, entitled Parker Estate Co., Limited, Complainant, v. B. Siegel Co., Defendant, brought for the purpose of permanently restraining relator by injunction from cutting certain proposed openings through the southerly wall of the so-called "Parker Block," located on lot 40, section 8, of the governor and judges' plan of the city of Detroit, at the southwest corner of State street and Woodward avenue in said city.

The premises in question are owned by the Parker Estate Company, and relator is its tenant. As such tenant it has for several years conducted in the six-story building thereon a growing retail business of selling ladies', misses', and children's outer garments and furs. It at first occupied under a ten-year lease given to one Joseph L. Hudson and by him assigned to relator, which lease by its terms expired August 1, 1914. On February 15, 1909, said Parker Estate Company executed a lease directly to relator, demising said premises for a term of ten years from and after August 1, 1914, at an increased rental, amounting to $35,000 per annum, payable in monthly installments. Because of its increasing business, relator found the Parker building inadequate, and, to meet the needs of its growth, leased for a term of ten years a six-story building adjacent on the south, known as the "Blackwell Building."

The Parker and Blackwell buildings, both six stories in height, are brick structures built to the line between the lots on which they stand, each having its own independent wall, the two, against each other, forming a solid double wall 100 feet deep and six stories high between the two buildings. For the convenient use of these two buildings together in the conduct of its business, relator planned and proposed to open through this double wall archways on each floor 7½ feet high by 6½ feet wide, protecting the same

by rolling steel shutters designed in accordance with requirements of the National Board of Underwriters, claiming authority to make such openings under the terms of its leases. Irrespective of what is provided for in the Blackwell lease, the Parker Estate Company insisted that this could not be done without its permission, which was refused, and obtained the preliminary injunction, as before stated.

A motion by relator for dissolution of said injunction, heard upon bill and answer, with supporting and opposing affidavits, was denied upon the ground "only" that the proposed openings constituted a change in the exterior of the building which, under the terms of the lease, could not be made without consent of the lessor.

The rights of the respective parties to this demise, in the particular giving rise to this litigation, are contingent on the significance of two provisions in the lease touching the exterior of said building, the material parts of which are as follows:

In paragraph 7 it is provided, amongst other things, that:

"The lessee shall keep the premises and every part thereof in good repair, including all necessary repairs to the roof and floors of said building, including the renewal or renewals of such floors, whenever same may become necessary, and including the painting of the exterior of said building, whenever the same may become necessary, in order to keep said building in clean and sightly condition, and at the end of said term," etc.

Paragraph 8 provides:

"It is mutually agreed that said lessee may, at his own expense, at any time during said term, make any change in said building not impairing the structural safety thereof, providing, however, that any change in the exterior of the building shall be subject to the approval of the lessor, and provided, further, that all

additions and improvements of a permanent character made by said lessee in and to said building shall become the property of the lessor," etc.

Relator contends that the proposed openings are not a change in the exterior of the building; that the wall in question is not an exterior wall, according to the purport of the language as used in the lease and as intended by the contracting parties; that in paragraph 7 the word "exterior," as applied to this building, related to and designated only the outside, visible, or exposed parts which the lessee was to paint, keep clean, and in sightly condition; that having been thus limited, and once used in the instrument with such meaning, the term must be presumptively held to have been used in the same sense in the succeeding paragraph; that, even if, as contended by lessor, the consent reservation in paragraph 8 could by any possibility be construed as applying to the concealed south wall, its scope is limited to structural strength and safety and gives no absolute right, when structural safety is fully protected, to arbitrarily and without reason prohibit the proposed openings.

For the lessor it is urged that "exterior of the building," as used in paragraph 8, necessarily means and includes all four walls, whether exposed to view or not, being a plain and wise provision clearly intended to protect the safety of the structure by authorizing the owner to decide upon proposed changes of the inclosing walls and to prohibit any alteration of the same without its consent.

The chancellor who heard the motion to dissolve this injunction held that the wall in question was an exterior wall of the Parker building, which the lease by distinct provision prohibited the lessee from in any way changing without consent of the lessor, which had been refused, and therefore it was an imperative duty of the chancery court, irrespective of any equities

involved or the merits of the lessor's refusal, to grant said preliminary injunction and, at least pending proceedings prior to a final hearing, decline to favorably consider any application for its dissolution.

If, as contended, the right to this injunction turned on whether the wall between the adjoining buildings is an "exterior wall," we are impressed that complainant's bill was well founded and is sustained by the undisputed facts. In construing an instrument, the words used are to be applied and confined to the subject-matter with which it deals. In this lease the Parker property only is mentioned, described, and demised. No reference is made to the Blackwell building, or any other adjacent structure which might temporarily or permanently conceal or obscure any part of the building leased. The "exterior of said building" mentioned in paragraphs 7 and 8 of the lease relates to the Parker building itself, treated independently and not in connection with the Blackwell building. So regarded, it is difficult to conceive of a six-story, quadrilateral building, or block, with but three exterior sides, or walls. It is to be observed that the paragraphs in question make no mention of walls in this connection; the only provision in regard to walls being that the lessee shall remove hanging ice or icicles from the "roof, cornice, or walls" to prevent accidents to pedestrians. By inference and to carry their arguments, counsel have, however, interpreted "exterior of said (or the) building" as synonymous with "exterior walls." Upon the character of the south wall of the Parker building, adjoining the Blackwell, the contending parties each cite one decision, touching exterior walls, and our subsequent research has failed to supplement them.

In behalf of relator reference is made to *Ittner* v. *Music Hall Ass'n*, 97 Mo. 561 (11 S. W. 58), which involves an interpretation of the architect's specifica-

tions in a building contract. These required all exterior walls to be faced with selected red brick, more expensive than those used generally. To use the red brick at the place in dispute, which were certain exposed parts at the top of the building, would have involved an additional cost of over $4,000, and the contractor contended the specifications did not require it. The court said in part:

"We do not find that the walls in question are anywhere specifically mentioned as exterior walls. Where they are specifically mentioned, as in the above quotation, they are called inner walls. That they are such up to the corridor roof is conceded by defendant. * * * And it is unreasonable to say, in the light of other portions of the specifications, that he (the architect) included these walls not exposed to view and forming open areas on top of the building. * * * We think the fair construction of the specifications, taken as a whole, is that they were not to be thus faced."

The substance of this decision is that the portion of two admittedly interior walls extending above the corridor roof of the building, not exposed to view from below and forming areas on the roof, were not required to be faced with selected dark red brick, as exterior walls, in the light of the elaborate specifications taken as a whole.

More closely in point, counsel for the lessor cite *Green* v. *Eales*, 114 Eng. Rep. 88, involving a lease wherein the lessor agreed to repair and keep in good condition the "external parts" of a dwelling house, except the glass and lead of the windows. The demised building stood adjoining another, which was removed during the term of the lease, and it became necessary to repair the wall of the rented dwelling thus exposed. The lessor refused to make the repairs, claiming that the subsequently exposed wall was not

an external part, within the terms of the lease. The court, in deciding the case, said:

"We are of opinion that it was. We think that it was so even before the Swan was pulled down, but certainly afterwards. The external parts of premises are those which form the inclosure of them, and beyond which no part of them extends; and it is immaterial whether those parts are exposed to the atmosphere, or rest upon and adjoin some other building which forms no part of the premises let."

The exterior of a building is of, if not coextensive with, its external parts. By analogy, under paragraph 7 of the lease in this case it would be the duty of relator to paint the exterior of the south wall of the Parker building, to keep it clean and sightly, in event of the Blackwell building being torn down and said wall exposed.

We are unable to follow relator's contention that the sense in which the words "exterior of said building" are used in paragraph 7 of the lease makes clear and controls the meaning of those words in paragraph 8. In one, the subject under consideration, and to which the words relate, is the sightly appearance of the visible outer surface; in the other, the structural safety of the building, without reference to its appearance. "Exterior" is not a word of defined technical meaning in law, and the lexical definitions are of scant assistance. Beyond the adjective impression of something outside, external, or outward, it has a definite meaning only as associated words may disclose.

We conclude that the associated words in paragraph 8 fairly disclose an intent to reserve to the lessor a right to be consulted when any material changes are proposed in those outer, external, or exterior parts of the building, where may lie its chief structural strength, and to withhold permission in case its structural safety is, or reasonably may be, jeopardized by

such changes, to the ultimate injury of the property demised; but read in connection with other provisions of the contract, and viewed in the light of the subject-matter, the relations of the parties, and the attending circumstances as disclosed, we cannot find that a reasonable construction of said paragraph confers upon the lessor any absolute right or arbitrary power to forbid such changes as could not affect or imperil its safety or value being made anywhere in said building. The paragraph was evidently framed with the thought and for the express purpose of authorizing relator to make such reasonable changes within the bounds of safety as the nature and development of its business might render advantageous or desirable. It first authorized in distinct terms and without qualification any desired change in the building which did not impair its structural safety; and then, with the apparently suggested afterthought that the chief structural strength of a building is commonly understood to be in its outer parts, or walls, the matter was further safeguarded by a supplemental provision making changes in the exterior subject to the lessor's approval, thus anticipating that changes in the exterior might be desired, and contemplating that they would be made when approved and, by inference, would be approved when safe. This supplemental provision appears on its face to have been inserted for the benefit of the lessor, presumptively in language of its own choosing, and therefore may be construed most strongly against it.

Between two constructions, each probable or possible, one making a contract reasonable and fair, as applied to the subject-matter, and the other unjust and unreasonable, the former is to be preferred.

Even if by strict construction it could possibly be said that the lessor has the arbitrary right, without reason and by *ipse dixit*, to absolutely prohibit any

changes in the exterior of the building, its only grounds for equitable relief by injunction are irreparable injury by reason of the damage done to the freehold through changes in the building impairing its structural safety. For anything claimed beyond that, the lessor may fairly be relegated to its remedy in an action at law. The summary remedy by injunction is only granted on strictly equitable grounds. This is recognized by the lessor in its injunction bill. As complainant, the grounds upon which it asks relief are that the proposed changes will weaken the building, increase the fire risk and rate of insurance, and, in case of fire, cause loss of rent, thus jeopardizing its freehold and threatening complainant with irreparable loss.

In its answer defendant flatly denies complainant's allegations that the safety of the building will be impaired or the insurance rate raised, and alleges, amongst other things, that it proposes to make the openings under plans and specifications to be prepared by engineers and architects of high standing, which it is willing to submit to the complainant; that it stands ready to adopt any suggestions or other methods not wholly unreasonable, is prepared to pay the expenses of any engineer or architect whom complainant may wish to consult in reference to said proposed work; that, denying any increased hazards, defendant is able and willing to assume any it is claimed there may be, has offered, and in said answer repeats the offer, to execute a bond, with satisfactory surety in such amount as complainant can reasonably exact, against all damage, also providing that at the expiration of the lease said wall will be restored to its original condition wholly at the expense of said defendant; that it will pay any increased insurance premiums, and observe any and all reasonable conditions which may be required or imposed by the court; that, when it

stated to complainant its intention to do this work (the business relations between the parties up to then having been harmonious), complainant's attitude was in substance:

"(1) Its insurance premiums might be increased, whereupon the defendant offered to pay the increase.

"(2) This reason having been taken away from complainant, it advanced the further reason that, on account of the terms of the lease, the fire danger might be increased, and thereupon the chances of the suspension of rent be increased. The defendant promptly stated that this feature of the lease would be altered, and that the defendant would pay rent under those circumstances.

"(3) And thereupon the complainant gave a last and final reason  *  *  *  that, if the defendant would pay a large amount of money during the term of the lease Exhibit B (in excess of $100,000), it would give its consent."

As to these offers and proposals, it is well said the court can make no new contract for the parties, its powers being limited to construing the contract as made by them; but, under a contract entitling complainant to have submitted to it for approval proposed changes, such offers and proposals made to complainant in that connection may be considered by a court of chancery in passing upon the equities of a suit for a permanent injunction to protect it from alleged impending irreparable injury to its freehold.

Changes increasing the fire risk are, we think, in practical construction reasonably within the prohibitory provisions of paragraph 8. The bill avers and the answer denies that the proposed changes will increase the fire risk and insurance premiums. Upon the motion to dissolve this injunction, conflicting affidavits of architects deposing as experts were presented by the respective parties to sustain their contentions. Upon this record, taken most favorably for

relator, we are inclined to the view that material issues of fact arise which should first be determined on final hearing of the suit in the circuit court in chancery.

This court, as a rule, does not review by mandamus discretionary action of a trial court in granting a preliminary injunction and refusing to dissolve the same; but where the authority to issue turns solely upon a question of law, and the return shows no material questions of fact involved, the propriety of the writ will be considered. *Ionia, etc., Ins. Co.* v. *Ionia Circuit Judge,* 100 Mich. 606 (59 N. W. 250, 32 L. R. A. 481); *Titus* v. *Chippewa Circuit Judge,* 168 Mich. 507 (134 N. W. 487). While in this case we have considered some of the questions of law involved in passing upon the contention that they are conclusive, we are unable to hold that this return with the accompanying exhibits shows only questions of law in dispute, and therefore are constrained to conclude from the record before us that the dissolution of said injunction before final hearing of the suit is a discretionary matter with the court of original jurisdiction.

The writ is denied.

STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred with STEERE, J.

BROOKE, J. A consideration of the entire contract convinces me that in the section in question the parties had in contemplation only the three walls of the building exposed to the outer air. The injunction should be dissolved, and the bill dismissed.

McALVAY, C. J., and KUHN, J., concurred with BROOKE, J.