Taylor, J.
This case presents the question whether a party alleging a violation of Const 1963, art 11, § 5, the provision of the Michigan Constitution related to the state civil service system, must make a particularized showing of irreparable harm to obtain a preliminary injunction against the alleged violation. We conclude that such a showing is required as one condition of obtaining a preliminary injunction. Accordingly, we vacate the preliminary injunction entered by the circuit court in this case in its entirety. Notably, we are not considering the question whether an actual constitutional violation, which could be *214 remedied by entry of a permanent injunction, has occurred.
I. FACTUAL AND PROCEDURAL BACKGROUND
This case arises from the adoption by defendant Civil Service Commission on May 8, 1997, of amended Civil Service Rule 4-6, with a stated effective date of June 1, 1997. While the details of this rule are not important to our analysis, the rule generally governs circumstances in which state agencies subject to civil service regulation are allowed to contract and pay for personal services from persons who are not state civil service employees and procedures to be followed in that regard. The rule contains two provisions that have been alleged by plaintiffs to be violative of Const 1963, art 11, § 5.[1] First, there is a “preauthorization” provision that would allow a state agency to authorize disbursements for any services on a preapproved list without submitting a specific request for approval to the Civil Service Commission. Second, the amended rule would add a new provision for “decentralized approval” of contracts and payments for personal services rendered by persons other than state civil service employees in certain situations.
*215 In June 1997, the trial court granted plaintiffs a preliminary injunction that prohibited the Civil Service Commission “from implementing, executing, enforcing, or in any way giving effect” to Civil Service Rule 4-6. Critical to the issue presently before this Court, the trial court opined in its oral ruling on the preliminary injunction motion that a showing of “some particularized injury or damage” was not necessary to obtain a preliminary injunction against an alleged violation of Const 1963, art 11, § 5. The trial court stated that “if a violation of [§ 5] occurs, my reading is that would be irreparable harm, not just to the Plaintiffs, but to every citizen of the state.”
In July 1998, the Court of Appeals granted defendant’s application for leave to appeal from the issuance of the preliminary injunction, and eventually affirmed in part and reversed in part.[2] The Court of Appeals opined that the “decentralized approval” sub-rule of Civil Service Rule 4-6 was “facially unconstitutional”[3] and that the trial court did not abuse its dis *216 cretion by finding that plaintiffs were likely to prevail on that provision. 236 Mich App 96, 102; 600 NW2d 362 (1999). However, the Court of Appeals concluded that the “preauthorization” provisions of the challenged civil service rule were not facially unconstitutional and that the trial court abused its discretion by enjoining those provisions. 236 Mich App 103-105.[4]
Central to the present issue, the Court of Appeals rejected defendant’s position that plaintiffs should not have been granted any preliminary injunction whatsoever because of their failure to show irreparable harm. The Court of Appeals stated:
Defendant next argues that no injunction should have been ordered where plaintiffs failed to demonstrate that they would suffer irreparable injury if the injunction was not issued. It argues that “[a] bare allegation of a constitutional violation fails to demonstrate irreparable harm. ” We disagree because Const 1963, art 11, § 5 specifically provides that “ [violation of any of the provisions hereof may be restrained or observance compelled by any citizen of the state.” As a matter of first impression, we believe that this language is a constitutional declaration that a violation of Const 1963, art 11, § 5, in itself, amounts to irreparable harm supporting injunctive relief. [236 Mich App 106 (emphasis added).]
*217 While it may have been more clearly stated, the emphasized language indicates that “a bare allegation of a constitutional violation” is sufficient to show irreparable harm. In other words, the Court of Appeals concluded that a showing of irreparable harm to a particular party is not required for a preliminary injunction against an alleged violation of § 5.
We granted defendant’s application for leave to appeal, “limited to the issue whether a showing of irreparable harm is required to justify a preliminary injunction against an alleged violation of section 5.” 463 Mich 925 (2000).
n. ANALYSIS
We review a trial court’s grant of injunctive relief for an abuse of discretion. See, e.g., Holly Hop v Dep’t of Natural Resources, 440 Mich 891 (1992) (explaining that “granting of injunctive relief is within the sound discretion of the trial court, although the decision must not be arbitrary and must be based on the facts of the particular case”).
Ordinarily, the first requirement that a party must meet to request a trial court to grant any type of relief, including an injunction, is that the party have “standing” to request the relief. This means that a party is normally required to have a sufficiently concrete interest in bringing a case that it can be expected to provide effective advocacy. Allstate Ins Co v Hayes, 442 Mich 56, 68; 499 NW2d 743 (19963). Said another way, standing has been described as a requirement that a party ordinarily must have a substantial personal interest at stake in a case or controversy, as opposed merely to having a generalized *218 interest in the same manner as any citizen. House Speaker v Governor, 443 Mich 560, 572; 506 NW2d 190 (1993).[5] Recently, we have described it even more succinctly by indicating that the concept of standing ordinarily requires that a party have “an interest dis *219 tinct from that of the public.” Lee v Macomb Co, 464 Mich 726; 629 NW2d 900 (2001).
It is this requirement that unquestionably is targeted by § 5 when it provides that “[violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.” Plaintiffs further contend, however, that more than this was targeted by § 5’s language; that not only did these words eliminate usual standing requirements, but they also should be read to mean that the usual requirement that no preliminary injunction should issue unless the plaintiff could demonstrate a showing of irreparable harm was eliminated.
It is important to be clear that the present appeal involves only the requirements for preliminary injunctive relief, an extraordinary remedy that is sometimes granted before a case is even decided on the merits. It is beyond reasonable dispute that a trial court has the authority, and, in appropriate cases, the duty, to enter permanent injunctive relief against a constitutional violation. See, e.g., Sharp v Lansing, 464 Mich 792; 629 NW2d 873 (2001) (discussing availability of injunctive relief against a constitutional violation). Moreover, the plain language of § 5 provides that “[violation of any of the provisions here may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.” Thus, it is plain that any Michigan citizen may bring an action in a state trial court against an alleged violation of § 5 and that, if the trial court in ruling on the merits of the case at its final resolution concludes a violation has occurred, that violation may be remedied by appropriate injunctive or mandamus relief *220 such as a permanent injunction. The only question we are considering is whether a plaintiff may also obtain a preliminary injunction against the alleged constitutional violation before the case is even decided on the merits without making a particularized showing of irreparable harm.
To evaluate plaintiffs position regarding the requirements for a preliminary injunction in the present context, it is appropriate to begin our analysis by considering the historical background of Const 1963, art 11, § 5.
It is generally accepted that the state’s modem civil service system had its genesis in the 1936 Report of the Civil Service Study Commission. Council No 11, AFSCME v Civil Service Comm, 408 Mich 385, 397; 292 NW2d 442 (1980). That commission issued “a 94-page ringing condemnation of the longstanding ‘spoils system’, or ‘patronage system’[6] of state personnel practices and detailed recommendations for the enactment of legislation to establish a state civil ser *221 vice system.” Id. The following year, the Legislature enacted civil service legislation in 1937 PA 346.
However, the bulk of the civil service reforms enacted in 1937 were gutted during the next regular session of the Legislature in 1939 when, “obviously dissatisfied with reform that had been wrought, the newly elected anti-civil service Legislature adopted a group of bills designed primarily to destroy the civil service system which had just been established. . . .” Council No 11, supra at 399.[7] Fed up, the response of the people of the state in 1940 was to place on the ballot and pass a constitutional amendment,[8] described formally as Const 1908, art 6, § 22. This amendment included provisions that defined the state employees to be included in the state civil service, provided for the composition and duties of the Civil Service Commission, and, in language that has been continued in our present Michigan Constitution in § 5, provided that “[violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.” Const 1908, art 6, § 22.
Given this background, we then must ask what exactly was it that the people would have understood they were doing in passing this amendment, because *222 it is this understanding that is the key to its meaning. In particular, it is this inquiry that will answer our question with respect to how expansively the citizens can be understood to have changed the rules, not only regarding standing, but also the rules regarding the irreparable injury requirements for securing a preliminary injunction.
To begin this probe, basic doctrines regarding constitutional construction are useful to recall. Initially, of course, if the language of a constitutional provision is plain, it is that meaning we give to it. As was stated in Peterman v Dep’t of Natural Resources, 446 Mich 177, 184; 521 NW2d 499 (1994), we examine how constitutional language was “understood by its ratifiers at the time of its adoption.” This is straightforward. Yet, what if the constitutional language had no plain meaning, but rather is a technical legal term or a phrase of art? In answering this, the great constitutional law scholar and member of this Court in the nineteenth century, Justice Thomas M. Cooley, said that in construing technical legal terms used in a constitution “we must suppose these words to be employed in their technical sense.” 1 Cooley, Constitutional Limitations (8th ed), p 132. Paying heed to this rule, this Court applied this principle to the technical legal phrase “assistance of counsel” in People v Pickens, 446 Mich 298; 521 NW2d 797 (1994):
[T]he phrase “assistance of counsel,” by necessity, will not be defined in great detail in the constitution. Nevertheless, it is one of many terms that has “acquired a well-understood meaning, which the people must be supposed to have had in view in adopting them.” [Id. at 310, quoting 1 Cooley, supra at 132.]
*223 In a similar vein, this Court observed in Walker v Wolverine Fabricating & Mfg Co, Inc, 425 Mich 586, 596-597; 391 NW2d 296 (1986), that one method of interpreting constitutional language that is “in no way a part of the common vocabulary” (which would surely apply to the phrase “injunctive proceedings”) is to “survey contemporaneous judicial decisions and legal commentaries for evidence of a consensus within the legal community regarding the meaning of a term.” This, then, is the rule: if a constitutional phrase is a technical legal term or a phrase of art in the law, the phrase will be given the meaning that those sophisticated in the law understood at the time of enactment unless it is clear from the constitutional language that some other meaning was intended.[9]
Let us then examine what was understood in the law in 1940 by the phrase “injunctive proceedings.” The traditional rules governing “injunctive proceedings” were well established by 1940 including a requirement of a showing of irreparable injury to the person or entity seeking the injunction as a condition for obtaining a preiiminary injunction or, as it was often termed at the time, an interlocutory injunction. Indeed, a 1905 treatise on injunctions provided that *224 an interlocutory injunction will not be allowed “where the injury which will result from the invasion of that right is not irreparable.” 1 High, Injunctions (4th ed), § 22, p 367. Discussion of this point in Michigan case law predating 1940 also indicates that a showing of irreparable harm is a requirement for the issuance of a preliminary injunction. See Baltic Mining Co v Houghton Circuit Judge, 177 Mich 632, 643; 144 NW 209 (1913), where this Court indicated that a preliminary injunction may be granted “if it appears that there is a real and substantial question between the parties, to be investigated in a court of equity, and, in order to prevent irremedial injury to the complainant, before his claims can be investigated, it is necessary to prohibit any change in the conditions and relations of the property and of the parties during the litigation” (citation omitted). Similarly, in B Siegel Co v Wayne Circuit Judge, 183 Mich 145, 154; 149 NW 1015 (1914), this Court stated that, for a landlord to obtain a preliminary injunction against structural changes to a building, it was necessary to show an “irreparable injury by reason of the damage done to the freehold through changes in the building impairing its structural safety.”[10]
*225 Thus, it is clear that in 1940 it was beyond dispute in the legal community that a party needed to make a particularized showing of concrete irreparable harm or injury in order to obtain a preliminary injunction. Moreover, there is no basis to conclude that the requirements to secure a preliminary injunction changed in any pertinent way between the adoption of the amendment in 1940 and the adoption of its successor, § 5, in the present Michigan Constitution in 1963, or even up to this day. The requirement of a showing of irreparable harm remains as it did a century ago. In our latest statement on this issue in Michigan State Employees Ass’n v Dep’t of Mental Health, 421 Mich 152, 157-158; 365 NW2d 93 (1984), this Court reiterated the requirement of a showing of irreparable harm as a prerequisite for a preliminary injunction, explaining that it was a requirement for the issuance of a preliminary injunction to demonstrate “that the applicant will suffer irreparable injury if a preliminary injunction is not granted.”[11]
Accordingly, we conclude that a particularized showing of irreparable harm was, and still is, as our *226 law is understood, an indispensable requirement to obtain a preliminary injunction. Moreover, the people, in causing the Michigan Constitution to be amended in 1940, evidenced no desire, as they had done with standing, to modify the traditional rules that had pertained with regard to this requirement for a preliminary injunction. Therefore, when considering the request for a preliminary injunction in this matter, the trial court and the Court of Appeals were in error in granting any preliminary injunction without a showing of concrete irreparable harm to the interests of a party before the Court.
We underscore, in accordance with the limited grant of leave in this case, that we are concerned only with the requirements for a preliminary injunction. This opinion expresses no view about the proper resolution of the merits of this case, i.e., whether Civil Service Rule 4-6 is violative in whole or in part of § 5.
m. RESPONSE TO DISSENT
Contrary to the possible implication of the dissent, this opinion does not preclude the ability to obtain any injunctive relief when the Civil Service Commission acts in violation of § 5. Nothing of the sort has happened. This appeal does not involve what relief is available when, after a hearing on the merits, the court is confronted with whether to issue a permanent injunction. Rather, we are concerned with the preliminary injunction, an injunction that is sought before the parties have had their day in court. Then, in that situation and that situation alone, the petitioner must demonstrate irreparable injury. This is utterly unexceptional. It has, indeed, been our law, as this opinion has taken pains to point out, unvaryingly *227 since Michigan became a state. It is, we believe, the law in every other state of the union as well.
Thus, the dissent is incorrect in describing our approach as being “to completely destroy the power of ‘any citizen’ to compel constitutional compliance.” Post at 240. Nothing in this opinion restricts, in any way, the authority of a trial court to grant appropriate relief, including entry of a permanent injunction, if a Michigan citizen establishes an actual violation of § 5 when a case is decided on the merits. Rather, pursuant to the plain language of § 5 stating that “[violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state,” any Michigan citizen may bring suit to challenge an alleged violation of this provision of the Michigan Constitution without meeting ordinary standing requirements. Further, if the trial court decides the merits of the case in favor of the plaintiff, the trial court may then enter a permanent injunction or other appropriate relief against the violation—even in the absence of irreparable harm to any person. This is because § 5 expressly provides the authority to restrain a violation of its provisions. Thus, if a trial court, in resolving the merits of a case, determines that a violation of § 5 has actually occurred, the trial court necessarily has authority to grant injunctive or mandamus relief against the violation. However, by definition, a decision on a preliminary injunction is made before there is even a determination of the merits of a case. This opinion merely reaffirms that a plaintiff alleging a violation of § 5 may not obtain preliminary injunctive relief, which in the ordinary course of things would be addressed before a consti *228 tutional violation has been established, without meeting the traditional requirements for this extraordinary relief.
Further, we are not “implying that irreparable harm must have already occurred in order for [preliminary] injunctive relief to be available.” Post at 236. Rather, as stated earlier, we recognize that a preliminary injunction may be appropriately entered if it is demonstrated that “the applicant will suffer, irreparable injury” absent the preliminary injunction (and the other appropriate prerequisites to the grant of a prehminary injunction are met), post at 241, quoting Michigan State Employees Ass’n, supra. In other words, a trial court may properly grant a preliminary injunction if a party shows that it will otherwise imminently suffer irreparable harm and the other proper grounds for such relief are satisfied.
Finally, unlike the dissent, we see nothing “inconsistent,” post at 242, n 7, in recognizing that any Michigan citizen has “standing” to challenge an alleged violation of § 5, but that a party doing so must make a particularized showing of irreparable harm in order to obtain a preliminary injunction against the alleged violation. As we have discussed, the plain language of § 5 necessarily requires the courts to allow any Michigan citizen to challenge an alleged violation of this constitutional provision and to obtain relief if an actual violation is found when the case is resolved on the merits. However, a preliminary injunction before there is a decision on the merits—and, thus, before it can be said that a violation of § 5 has been established in court—is an extraordinary type of relief available only with a showing of irreparable harm. It is no more “inconsistent” to draw this dis *229 tinction than it is to recognize that there are a multitude of suits between private litigants in which both sides obviously have standing to litigate the case, but neither has any basis to obtain a preliminary injunction against the other.
IV. conclusion
We conclude that the lower courts erred in viewing a particularized showing of irreparable harm as unnecessary to obtaining a preliminary injunction against an alleged violation of Const 1963, art 11, § 5. In other words, we read nothing in § 5 that would suggest that, in the civil service realm, the actions of the government are any more susceptible to preliminary injunctive relief than are the actions of any other private or public entity. Pending the resolution of a suit claiming a violation of § 5, a party to such a suit may obtain a preliminary injunction only after satisfying all the requirements traditionally required for this extraordinary relief. Accordingly, the circuit court abused its discretion by granting a preliminary injunction in the present case in the absence of such a showing. Thus, we reverse the Court of Appeals in part, vacate the preliminary injunction entered by the circuit court in this case in its entirety, and remand this case to the circuit court for any appropriate proceedings consistent with this opinion.
Corrigan, C.J., and Young and Markman, JJ., concurred with Taylor, J.
*230 APPENDIX
Entered: July 30, 2001 01-34
Proposed Amendments of Rules 3.310, 7.208, and 7.213 of the Michigan Court Rules
On order of the Court, this is to advise that the Court is considering amendments of Rules 3.310, 7.208, and 7.213 of the Michigan Court Rules. Before determining whether the proposal should be adopted, changed before adoption, or rejected, this notice is given to afford any interested person the opportunity to comment on the form or the merits of the proposal. We welcome the views of all who wish to address the proposal or who wish to suggest alternatives. Before adoption or rejection, this proposal will be considered at a public hearing by the Court. The Clerk of the Court will publish a schedule of future public hearings.
Publication of this proposal does not mean that the Court will issue an order on the subject, nor does it imply probable adoption of the proposal in its present form.
[The present language would be amended as indicated below.]
Rule 3.310. Injunctions.
(A) Preliminary Injunctions.
(l)-(4) [Unchanged.]
f5~) If a preliminary injunction is granted, the court shall promptly schedule a pretrial conference. The trial of the action on the merits must be held within 6 months after the injunction is granted, unless good cause is shown or the parties stipulate to a *231 longer period. The court shall issue its decision on the merits within 56 days after the trial is completed.
(B)-(I) [Unchanged.]
Rule 7.208. Authority of Court or Tribunal Appealed From.
(A) Limitations. After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except
(T) by order of the Court of Appeals,
£2) by stipulation of the parties,
£3} after a decision on the merits in an action in which a preliminary injunction was granted, or
£4} as otherwise provided by law.
In a criminal case, the filing of the claim of appeal does not preclude the trial court from granting a timely motion under subrule (B).
(B) -(I) [Unchanged.]
Rule 7.213. Calendar Cases.
(A)-(B) [Unchanged.]
(C) Priority on Calendar. The priority of cases on the session calendar is in accordance with the dates of the clerk’s notice to the parties, except that precedence shall be given to interlocutory criminal appeals,, and child custody cases, and interlocutory appeals from the grant of a preliminary injunction.
(D) -(E) [Unchanged.]
Staff Comment: The proposed amendments of Rules 3.310, 7.208, and 7.213 were announced by the Supreme Court in Michigan Coalition of State Employee Unions v Michigan Civil Service Commission, Docket No. 115579 (decided July 27, 2001). The amendments would require trial courts to expeditiously decide actions in which preliminary injunctions have been granted, and would allow them to proceed even if the Court of Appeals has granted interlocutory leave to appeal. Similarly, if the Court of Appeals granted leave to review entry of a preliminary injunction on an interlocutory basis, that court would be required to give priority to resolution of the appeal.
*232 The staff comment is published only for the benefit of the bench and bar and is not an authoritative construction by the Court.
Publication of this proposal does not mean that the Court will issue an order on the subject, nor does it imply probable adoption in its present form. Timely comments will be substantively considered, and your assistance is appreciated by the Court.
A copy of this order will be given to the secretary of the State Bar and to the State Court Administrator so that they can make the notifications specified in MCR 1.201. Comments on this proposal may be submitted in writing or electronically to the Supreme Court Clerk by November 1, 2001. P.O. Box 30052, Lansing, MI 48909, or MSC_clerk@jud.state.mi.us. When submitting a comment, please refer to File No. 01-34.

 Section 5 generally governs the responsibilities and duties of defendant Civil Service Commission. Central to the present case is the last paragraph of this constitutional provision, which states:
No payment for personal services shall be made or authorized until the provisions of this constitution pertaining to civil service have been complied with in every particular. Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.

 While we recognize that the order of the Court of Appeals granting leave also stayed further proceedings in the trial court, over a year passed between the issuance of the preliminary injunction and that Court of Appeals order. It is undisputed that, during this entire period from June 1997 to July 1998, the preliminary injunction remained in effect. While there may be reasons to explain the delay, it does seem troubling that the parties were subjected to such a long period of uncertainty and that a preliminary injunction against an officially promulgated governmental rule remained in effect for so long without any decision on the merits. We are today issuing proposed changes to the Michigan Court Rules to establish limitations on the period in which a preliminary injunction may be in effect pending final resolution of a case. The proposed changes to the court rules are attached as an appendix to this opinion.

 We note that the Court of Appeals later in its opinion seemed to disavow reaching a final or ultimate conclusion on the constitutional issues:
For purposes of reviewing the preliminary injunction only, we determine that the trial court properly concluded that plaintiffs were likely to prevail on their constitutional challenge to the *216 “decentralized approval” procedure, although it incorrectly determined that they will likely prevail in their constitutional challenge to the preapproval provision. ... We stress, however, that our analysis of these issues is for the purpose of ruling on the propriety of the preliminary injunction only. When the matters are tried, the actual determinations of all plaintiffs’ claims must initially be made by the trier of fact in the trial court. [236 Mich App 104-105.]

 Given that plaintiffs have not filed a cross-appeal, the portion of the Court of Appeals opinion reversing part of the trial court’s preliminary injunction is not before us for review.

 Justice Powell, in his concurrence in United States v Richardson, 418 US 166, 192; 94 S Ct 2940; 41 L Ed 2d 678 (1974), articulated reasons for the requirement of standing, apart from assuring effective advocacy in a particular case:
[W]e risk a progressive impairment of the effectiveness of the federal courts if their limited resources are diverted increasingly from their historic role to the resolution of public-interest suits brought by litigants who cannot distinguish themselves from all taxpayers or all citizens. The irreplaceable value of the power [of judicial review] articulated by Mr. Chief Justice Marshall lies in the protection it has afforded the constitutional rights and liberties of individual citizens and minority groups against oppressive or discriminatory government action. It is this role, not public esteem for the federal courts and has permitted the peaceful coexistence of the countermaj oritarian implications of judicial review and the democratic principles upon which our Federal Government in the final analysis rests.
The considerations outlined above underlie, I believe, the traditional hostility of the Court to federal taxpayer or citizen standing where the plaintiff has nothing at stake other than his interest as a taxpayer or citizen. It merits noting how often and how unequivocally the Court has expressed its antipathy to efforts to convert the Judiciary into an open forum for the resolution of political or ideological disputes about the performance of government.
In a similar vein, the United States Supreme Court observed in Lewis v Casey, 518 US 343, 349; 116 S Ct 2174; 135 L Ed 2d 606 (1996):
The requirement that an inmate alleging a violation of Bounds [v Smith, 430 US 817; 97 S Ct 1491; 52 L Ed 2d 72 (1977),] must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches. It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

 The report provided the following description of the prior “spoils system” of state employment:
The spoils system presupposes the existence of government jobs to be filled with loyal party workers who can be counted on not to do the state job better than it can be done by others, but rather to do the party work or the candidate work when elections roll around. The state office buildings are nearly empty during political conventions, and state money has always been used—indirectly of course—to enable state employees to move about the state and keep political fences in repair.
It is impossible to estimate the loss to the state of this kind of political activity, but the most inexperienced know that the amount is considerable. Not only is the regular work of the state interrupted or interfered with, but its services and funds are put at the disposal of political parties. [Id. at 397, n 10.]

 Among other provisions, the 1939 legislation reduced the scope of the state classified civil service, reduced the appropriation for the Civil Service Commission, and provided increased employment preferences for former state employees.

 As this Court explained in Council No 11, supra at 400-401:
Finally, in 1940, apparently dissatisfied with four years of political maneuvering and legislative advance and retreat on the civil service system issue, the people of Michigan adopted a constitutional amendment establishing a constitutional state civil service system, superseding the 1939 legislation.

 It is noteworthy that the Michigan Legislature has expressly adopted the same basic principle in connection with the interpretation of its work, statutes, namely, that common words and phrases are to be understood in conformity with their common meaning, but that technical words and phrases should be interpreted in accordance with their technical meaning:
All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. [MCL 8.3a.]

 Notably, other cases predating the adoption of the 1940 constitutional amendment that do not expressly state that a showing of irreparable harm is a requirement for obtaining a preliminary injunction nevertheless include language indicating that such a requirement was commonly understood to exist within the legal community. For example, in Grand Rapids E R Co v Calhoun Circuit Judge, 156 Mich 419, 421-422; 120 NW 1004 (1909), this Court found no abuse of discretion in a circuit court’s decision to dissolve a preliminary injunction where the circuit court concluded that the action sought to be enjoined would not cause irreparable injury to the moving party. Similarly, Heliker v Heliker, 184 Mich 657, 659; 151 NW 757 (1915), noted that a preliminary injunction against cutting trees on a parcel of land was issued after the filing of a complaint alleging *225 “loss and irreparable injury to the inheritance and great damage to the complainant.”

 We note that Michigan State Employees Ass’n also arose in the civil service context. In the course of reversing a preliminary injunction granted in favor of a discharged civil service employee, this Court noted that its “holding addresses the required showing of irreparable injury necessary to support the issuance of a preliminary injunction.” Id. at 135. This Court stated that such a preliminary injunction “should issue only in extraordinary circumstances.” Id. at 166.
The Court also outlined that, in addition to the required demonstration of irreparable harm to the moving party in the absence of a preliminary injunction, a trial court should consider (1) harm to the public interest if such an injunction is issued; (2) whether harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, and (3) the strength of the moving party’s showing that it is likely to prevail on the merits. Id. at 157-158.