Markman, C.J. (dissenting).
I respectfully dissent from this Court's order denying leave to appeal. The decision by the Court of Claims to issue this preliminary injunction is a matter of considerable significance for the constitutional architecture of this state. As explained further below, preliminary injunctions constitute an extraordinary remedy that must be granted only with extreme circumspection, and the effect of this preliminary injunction is that a single judge of the Court of Claims has summarily halted the implementation of a duly adopted legislative enactment of the two representative branches of Michigan's government. These circumstances warrant close consideration; a preliminary injunction should only be granted when the party seeking the injunction satisfies the high burden of establishing the necessary requirements to obtain this relief. In my judgment, plaintiffs did not do so here and the Court of Claims abused its discretion in holding otherwise. Accordingly, I would reverse the order of the Court of Claims issuing this preliminary injunction.
Plaintiffs filed suit in the Court of Claims challenging the constitutionality of MCL 388.1752b (§ 152b), which allocates funds to provide reimbursement for "actual costs incurred by nonpublic schools in complying with a health, safety, or welfare requirement mandated by a law or administrative rule of this state."[1] Plaintiffs argued that the disbursement of funds under § 152b would violate Const. 1963, art. 8, § 2, which prohibits public funds from being appropriated or paid "directly or indirectly to aid or maintain" a nonpublic *632 school. Plaintiffs further argued that § 152b constituted an appropriation of public money for private purposes without a two-thirds vote of each house of the Legislature, in violation of Const. 1963, art. 4, § 30. During the suit, plaintiffs sought a preliminary injunction to prevent the disbursement of funds under § 152b, and the Court of Claims granted this request. Defendants then filed an application for leave to appeal in the Court of Appeals, which denied the application for leave to appeal.
This Court reviews a trial court's grant of a preliminary injunction for an abuse of discretion. Detroit Fire Fighters Ass'n, IAFF Local 344 v. Detroit , 482 Mich. 18, 28, 753 N.W.2d 579 (2008). Preliminary injunctive relief constitutes a form of extraordinary relief, Mich. Coalition of State Employee Unions v. Civil Serv. Comm. , 465 Mich. 212, 219, 634 N.W.2d 692 (2001), and should be issued with caution and only when there is a compelling case for such relief, Mich. Consol. Gas Co. v. Pub. Serv. Comm. , 389 Mich. 624, 641, 209 N.W.2d 210 (1973) ("Before the court grants injunctive relief, even though it is on a temporary basis, a compelling case must be made for such action."). The party seeking the preliminary injunction
bears the burden of proving that the traditional four elements favor the issuance of a preliminary injunction. The trial court must evaluate whether (1) the moving party made the required demonstration of irreparable harm, (2) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) the moving party showed that it is likely to prevail on the merits, and (4) there will be harm to the public interest if an injunction is issued. [ Detroit Fire Fighters Ass'n , 482 Mich. at 34, 753 N.W.2d 579.]
First, plaintiffs failed to make the required demonstration of irreparable harm. Irrespective of any standing considerations, "a particularized showing of irreparable harm was, and still is, as our law is understood, an indispensable requirement to obtain a preliminary injunction ." Mich. Coalition , 465 Mich. at 225-226, 634 N.W.2d 692 (emphasis added). That is, even if it could be said that plaintiffs possessed standing under Lansing Schs. Ed. Ass'n v. Lansing Bd. of Ed , 487 Mich. 349, 372, 792 N.W.2d 686 (2010), absent any concrete and particularized injury, they still must demonstrate a particularized showing of irreparable harm in order to obtain a preliminary injunction. "The mere apprehension of future injury or damage cannot be the basis for injunctive relief," Pontiac Fire Fighters Union Local 376 v. Pontiac , 482 Mich. 1, 9, 753 N.W.2d 595 (2008), and "it is well settled that an injunction will not lie ... where the threatened injury is speculative or conjectural," id . at 9 n. 15, 753 N.W.2d 595 (quotation marks and citation omitted). Absent a particularized showing of concrete irreparable harm, "the extraordinary nature of a preliminary injunction would be trivialized." Id . at 11, 753 N.W.2d 595.
Plaintiffs offer three unconvincing reasons why they purportedly made the required demonstration of irreparable harm: (1) constitutional violations equate to irreparable harm, (2) the expenditure of funds will detrimentally affect their financial interests, and (3) a preliminary injunction is necessary to preserve their cause of action.
As to the first basis, plaintiffs rely solely upon Garner v. Mich. State Univ. , 185 Mich. App 750, 764, 462 N.W.2d 832 (1990), to argue that a constitutional violation by definition constitutes "irreparable harm which cannot be adequately remedied by an action at law." However, plaintiffs misconstrue Garner , which instead stands for *633 the proposition that "temporary loss of a constitutional right constitutes irreparable harm which cannot be adequately remedied by an action at law." Id . (emphasis added). Plaintiffs here make no argument that they specifically will suffer any loss of a constitutional right and, thus, their reliance on Garner is misplaced. The mere allegation of a constitutional violation is insufficient to demonstrate irreparable harm unless there is a showing of concrete irreparable injury to the party before the court . Mich. Coalition , 465 Mich. at 225-226, 634 N.W.2d 692. To hold otherwise would render it such that a preliminary injunction would be warranted in every case seeking judicial review of a legislative enactment. Plaintiffs' argument that the alleged unconstitutional disbursement of funds constitutes irreparable harm is nothing more than an assertion of generalized harm, which has traditionally been viewed as insufficient to justify the kind of premature and extraordinary judicial intervention requested in this case. See generally Hammel v. Speaker of House of Representatives , 297 Mich. App 641, 652, 825 N.W.2d 616 (2012) ("Plaintiffs' generalized argument that a constitutional violation would result in harm is insufficient because it is not particularized.").
As to plaintiffs' second basis (i.e., the expenditure of funds will detrimentally affect their financial interests), the Court of Claims specifically "decline[d] to find that [the irreparable harm consisted of] the $2.5 million that might have gone elsewhere...." Indeed, plaintiffs cannot show that they, or any other person or institution, would have otherwise received the disputed funds or are otherwise entitled to these funds in the event the allocation under § 152b is struck down.[2] Thus, this argument also fails.
As to plaintiffs' third basis, they contend that a preliminary injunction is necessary to preserve their opportunity even to bring a claim to prevent the alleged unconstitutional disbursement of funds. However, on appeal, plaintiffs fail altogether to recognize the amendment of § 152b that provides that the unexpended funds from 2016-2017 are carried forward into 2017-2018, which dissipates the need for a preliminary injunction on plaintiffs' "lost claims" grounds. Moreover, even assuming an alleged unconstitutional disbursement of funds in the event of a theoretical loss of their cause of action, plaintiffs again have failed to demonstrate how they specifically would be harmed. I am not convinced that these circumstances constitute "irreparable harm."[3]
Plaintiffs' arguments in support of an "irreparable harm" are tantamount to asserting *634 that an alleged constitutional violation has occurred absent any showing of a concrete or particularized injury to any of the plaintiffs who are actually in court. By issuing a preliminary injunction in these circumstances, the Court of Claims renders the extraordinary nature of a preliminary injunction trivial, Pontiac Fire Fighters , 482 Mich. at 11, 753 N.W.2d 595 ; negates the role of the "irreparable harm" factor; and, in my judgment, abuses its discretion in failing to accord reasonable meaning to this Court's traditional preliminary injunction factors.
Second, not only have plaintiffs failed to make the required demonstration of irreparable harm, they have also, perhaps even more significantly, failed to demonstrate a likelihood of success on the merits. "In order to justify the extraordinary remedy of a preliminary injunction, the moving party must show a likelihood that it will succeed on the merits of the claim." Northern Warehousing, Inc. v. Dep't of Ed. , 475 Mich. 859, 859, 714 N.W.2d 287 (2006) (emphasis added). Relevant to the likelihood of success in this case, the funds at issue are allocated under § 152b, and this statute, as with any other statute, carries a presumption of constitutionality :
A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt. [ Cady v. Detroit , 289 Mich. 499, 505, 286 N.W. 805 (1939) (citations omitted).]
In assessing this presumption, this Court's precedents must obviously be closely considered. In Traverse City Sch. Dist. v. Attorney General , 384 Mich. 390, 406, 185 N.W.2d 9 (1971), this Court addressed Const. 1963, art. 8, § 2, noting that this provision prohibited the state from appropriating or paying public monies " 'directly or indirectly to aid or maintain' " a nonpublic school and that this language was added to the Michigan Constitution as a result of "Proposal C," a constitutional amendment from the early 1970s. In giving meaning to Const. 1963, art. 8, § 2, this Court held that "[t]he language of this amendment, read in the light of the circumstances leading up to and surrounding its adoption, and the common understanding of the words used, prohibits the purchase , with public funds, of educational services from a nonpublic school." Id . at 406-407, 185 N.W.2d 9 (emphasis added). This Court specifically addressed whether Proposal C prohibited the state from providing what we described as "auxiliary" services to nonpublic school students at nonpublic schools. Id . at 417, 185 N.W.2d 9. Focusing on the inherent characteristics of auxiliary services, which were understood to consist of general health and welfare measures by nature, this Court held that the state may provide those services without running afoul of Const. 1963, art. 8, § 2 :
The prohibitions of Proposal C have no impact upon auxiliary services. Since auxiliary services are general health and welfare measures, they have only an incidental relation to the instruction of private school children. They are related to educational instruction only in that by design and purpose they seek to provide for the physical health and safety of *635 school children, or they treat physical and mental deficiencies of school children so that such children can learn like their normal peers. Consequently, the prohibitions of Proposal C which are keyed into prohibiting the passage of public funds into private school hands for purposes of running the private school operation are not applicable to auxiliary services which only incidentally involve the operation of educating private school children. [ Id . at 419-420, 185 N.W.2d 9 (emphasis added).]
In rejecting the argument that Proposal C prohibited the state from providing such auxiliary services to private school students, we explained that the "literal perspective on Proposal C's mandate of no public funds for nonpublic schools would place the state in a position where it discriminates against the class of nonpublic school children in violation of the equal protection provisions of the Fourteenth Amendment of the United States Constitution." Id . at 430, 185 N.W.2d 9. This Court further explained, "In the case of parochial or other church-related school children ..., [P]roposal C would violate the free exercise of religion clause of the First Amendment to the United States Constitution." Id . Finally, this Court noted "that health and safety measures only incidentally benefit religion and do not constitute state support of or excessive entanglement in religion"; therefore, there were no Establishment Clause concerns with providing exclusively auxiliary services to nonpublic school students. Id . at 435 n. 22, 185 N.W.2d 9.
Here, the funds allocated under § 152b provide reimbursement only for "actual costs incurred by nonpublic schools in complying with a health, safety, or welfare requirement mandated by a law or administrative rule of this state."[4] As with the auxiliary services in Traverse City Sch. Dist. , complying with a health, safety, or welfare requirement bears only "an incidental relation to the instruction of private school children." Id . at 419, 185 N.W.2d 9. As a result, it is difficult to discern how these conceivably could breach Proposal C, and it is even more difficult to discern how plaintiffs have borne their burden of demonstrating a likelihood of success on this issue.[5] That is not to say that the statute may not ultimately be ruled unconstitutional, only that the burden upon plaintiffs at this juncture to show a likelihood of unconstitutionality has not been satisfied by either plaintiffs or the trial court.
In summarily concluding that plaintiffs demonstrated a likelihood of success on the merits, the Court of Claims failed entirely to analyze the deficiencies in plaintiffs' arguments, neglected even to mention the presumption of constitutionality afforded to § 152b, and eschewed any effort to distinguish the circumstances in this case *636 from those in Traverse City Sch. Dist. This overall lack of serious analysis largely turns the relevant standards and burden of proof on their head, effectively presuming a likelihood of success for plaintiffs while giving little regard to the presumption of constitutionality and the precedents of this Court, which necessarily come into play in the preliminary-injunction analysis. In my view, plaintiffs here have failed altogether in light of Traverse City Sch. Dist. to make a clear showing of unconstitutionality and as a result have failed to demonstrate a likelihood of success on the merits. Absent this showing, issuance of a preliminary injunction is improper. Northern Warehousing, Inc. , 475 Mich. at 859, 714 N.W.2d 287.
Third, this Court's decision in Traverse City Sch. Dist. is reinforced by a recent United States Supreme Court decision in Trinity Lutheran Church of Columbia v. Comer , --- U.S. ----, 137 S.Ct. 2012, 198 L.Ed.2d 551 (2017), which addressed an analogous issue involving the denial of state grant monies to a church-affiliated preschool based on a Missouri constitutional provision similar to Proposal C. After acknowledging that providing the state grant monies to a church-affiliated preschool would not offend the Establishment Clause, Trinity Lutheran held that under the Free Exercise Clause a state could not deny an otherwise available public benefit on the basis of religious status. Id . at ----, 137 S.Ct. at 2019. This holding mirrors the conclusion in Traverse City Sch. Dist. that the Establishment Clause did not prohibit the state from providing general health and safety measures to nonpublic schools and that the Free Exercise Clause required the Court to reject the interpretation of Proposal C that prohibited the state from providing auxiliary services to private school students. See Traverse City Sch. Dist. , 384 Mich. at 430, 434 & n. 22, 185 N.W.2d 9. As reflected in both of these cases, the Establishment Clause is not the only relevant constitutional provision; rather, the Free Exercise Clause is also highly relevant. In the words of Trinity Lutheran , "there is 'play in the joints' between what the Establishment Clause permits and the Free Exercise Clause compels." Trinity Lutheran , --- U.S. at ----, 137 S.Ct. at 2019 (citation omitted). When confronted with arguments that "auxiliary" aid was unconstitutional, both this Court and the United States Supreme Court held not only that such aid did not run afoul of the Establishment Clause but also that the Free Exercise Clause was implicated by an application that would deny aid on the basis of religious status.[6] Thus, Trinity Lutheran effectively reinforces the insights and conclusions of Traverse City Sch. Dist.
Fourth, even if there were any doubt concerning the validity of Traverse City Sch. Dist. , which held that the state may provide general health and safety measures to nonpublic school students at nonpublic schools without offending Const. 1963, art. 8, § 2, the Court of Claims may not ignore precedents set forth by the highest court of this state. A lower court does not have the authority to strike down or disregard "precedent from this Court that has not been clearly overruled by the Court or superseded by subsequent legislation or constitutional amendment."
*637 Associated Builders & Contractors v. Lansing , 499 Mich. 177, 192, 880 N.W.2d 765 (2016). To put a finer point on it, except when a precedent of this Court has been overruled or superseded, lower courts are "not authorized to anticipatorily ignore our decisions...." Id . at 191-192, 880 N.W.2d 765 (emphasis omitted). Simply put, the Court of Claims was bound to follow Traverse City Sch. Dist. 's interpretation of Const. 1963, art. 8, § 2, and, in my judgment, did not do so here.
Fifth, the above problems are compounded in considering the effect of the decision by the Court of Claims, which inappropriately exercises the judicial power at the expense of the legislative and executive powers. Given that a preliminary injunction requires a likelihood of success on the merits, issuing the instant injunction presumes the unconstitutionality of a law and temporarily nullifies that law-one enacted in concord by the legislative and executive branches-by postponing its implementation until after it has passed judicial muster. That is not the way our constitutional system operates. Once again, it typically is a matter of considerable constitutional consequence when a single judge delays the implementation of a legislative measure approved by 148 legislators and one governor, each acting on behalf of "we the people." That is not to say that a preliminary injunction may never delay the implementation of a law, but only that such relief may only be granted after careful consideration of the necessary requirements for a preliminary injunction, the presumption of constitutionality afforded to our statutes, and this Court's precedents. Ultimately, plaintiffs in these circumstances have a high burden to which they must be held in order to avoid trivializing the extraordinary nature of injunctive relief and our separation of powers. Const. 1963, art. 3, § 2. Plaintiffs here utterly failed to meet these high burdens, yet defendants have now been enjoined, at least temporarily, from having § 152b take effect. See New Motor Vehicle Bd. of California v. Orrin W. Fox Co. , 434 U.S. 1345, 1351, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J.) (stating that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury").
By failing to engage in a thorough and disciplined analysis of whether a concrete and particularized "irreparable harm" would be suffered by a party before the court and failing to sufficiently analyze plaintiffs' likelihood of success in prevailing on the merits, the Court of Claims rendered trivial the extraordinary nature of a preliminary injunction. In doing so, the Court of Claims failed to give deference to the presumption of constitutionality afforded to § 152b and this Court's precedents and it improperly enhanced the role of the judiciary within our constitutional process at the expense of the roles of legislative and executive authorities. For these reasons, I would reverse the decision of the Court of Claims.
Clement, J., did not participate due to her prior involvement as chief legal counsel for the Governor.

MCL 388.1752b(1). The allocation is for fiscal years 2016-2017 and 2017-2018, and the total amount of reimbursement is not to exceed $2.5 million for each fiscal year. Notably, during the pendency of this litigation, § 152b was amended to narrow the scope of the reimbursement, which previously included educational matters such as the teaching of civics courses. See 2017 PA 108.

Plaintiffs argue that the funds appropriated under § 152b are drawn "[f]rom the general fund money appropriated under section 11," i.e., MCL 388.1611, and therefore would have been appropriated for public schools had they not been appropriated under § 152b. However, the § 11 general fund consists of funds "appropriated for the public schools of this state and certain other state purposes relating to education ...." MCL 388.1611 (emphasis added). Plaintiffs fail to explain how any of the individual plaintiffs in this case would have benefitted in any way from the funds remaining in the general fund. Plaintiffs cannot say what educational purposes the money would alternatively have served or what specific persons or institutions, if any, would have benefitted. That is, they have failed to make any showing of harm, much less a "particularized showing of irreparable harm" to the interests of any party before the court .

This already unconvincing argument is diminished even further when taking into account that, as explained below, this is a cause of action in which plaintiffs have failed to demonstrate a likelihood of success on the merits; therefore, under this basis, their alleged "irreparable harm" is the loss of a cause of action for which they failed to show a likelihood of success on the merits.

MCL 388.1752b(1). For instance, MCL 333.9208 requires that schools not permit a child to attend unless the school receives a certificate of immunization or statement of exemption, and MCL 257.715a requires inspection of certain school buses.

Plaintiffs alternatively argue that they are likely to prevail on their claim under Const. 1963, art. 4, § 30, which provides, "The assent of two-thirds of the members elected to and serving in each house of the legislature shall be required for the appropriation of public money or property for local or private purposes." However, the funds appropriated under § 152b "are intended for the public purpose of ensuring the health, safety, and welfare of the children in nonpublic schools and to reimburse nonpublic schools for costs described in this section." MCL 388.1752b(7). Ensuring the health, safety, and welfare of schoolchildren constitutes a proper public purpose, and, as explained above, the appropriation of funds under § 152b may well constitute an equally constitutional means to further that public purpose.

Although Trinity Lutheran involved express discrimination based upon religious classification, Trinity Lutheran , 137 S.Ct. at 2021, and Const. 1963, art. 8, § 2 involves all nonpublic schools, religious or secular, Traverse City Sch. Dist. noted that we look to the "impact" of the classification, Traverse City Sch. Dist. , 384 Mich. at 433-434, 185 N.W.2d 9 (noting that "here with ninety-eight percent of the private school students being in church-related schools the 'impact' is nearly total").