MICHIGAN COALITION OF STATE EMPLOYEES UNIONS v CIVIL SERVICE COMMISSION

Docket No. 212236. Submitted May 6, 1999, at Lansing. Decided June 8, 1999, at 9:00 A.M. Leave to appeal sought.

Michigan Coalition of State Employee Unions brought an action in the Ingham Circuit Court against the Civil Service Commission, challenging the constitutionality of, and seeking to enjoin the defendant from implementing, Civil Service Rule 4-6, as revised in 1997, which specifies the procedures by which state agencies are to contract and pay for services by persons outside the state civil service. International Union, United Automobile Aerospace & Agricultural Implement Workers of America (UAW) and Lynda Taylor-Lewis intervened as plaintiffs. The 1997 rule retains a provision by which state agencies, without seeking the prior approval of the commission, may contract and pay for any service listed by the commission through the Department of Civil Service on a list of preauthorized services (hereafter referred to as the preauthorization provision). The 1997 rule adds a provision by which state agencies, under certain circumstances, may authorize disbursement for the personal services of persons outside the state civil service without the approval of the Department of Civil Service (hereafter referred to as the decentralized approval provision). The court, James R. Giddings, J., issued a preliminary injunction against implementation of the 1997 rule. The plaintiffs filed an amended complaint to challenge the 1993 version of the civil service rule and thereafter served the commission with a request for the production of documents dating back to 1993 and relating to disbursements for personal services by persons outside the state civil service. The commission moved for a protective order, but the court denied the motion. The commission appealed by leave granted.

The Court of Appeals held:

1. Const 1963, art 11, § 5 requires the Civil Service Commission to, among other things, approve or disapprove disbursements for all personal services and provides that a violation of any of its provisions may be restrained by injunctive or mandamus proceedings brought by any citizen of the state.

2. The decentralized approval provision of the civil service rule at issue is unconstitutional on its face. The trial court did not abuse its discretion in preliminarily enjoining the implementation of this provision because the plaintiffs are likely to prevail on the merits of their claim that this provision is unconstitutional.

3. The preauthorization provision of the civil service rule is not unconstitutional on its face. The trial court abused its discretion in preliminarily enjoining the implementation of this provision inasmuch as the plaintiffs are not likely to prevail on the merits of their claim that this provision is unconstitutional.

4. Egregious harm to the public from the issuance of the injunction is not a consideration in this case in light of the express provision in Const 1963, art 11, § 5 for injunctive relief to restrain violations of that constitutional provision. The injunction issued in this case does not usurp the commission's rule-making power.

5. The plaintiffs did not have to show that irreparable harm would result if the injunction was not issued. Such a showing is not necessary in light of the express provision in Const 1963, art 11, § 5 for injunctive relief to restrain violations of that constitutional provision.

6. Const 1963, art 11, § 5 allows any citizen to seek injunctive relief against violation of that constitutional provision. The coalition, as an organization made up of individuals who can seek an injunction under Const 1963, art 11, § 5, has standing to seek an injunction against the implementation of the civil service rule at issue.

7. The trial court has subject-matter jurisdiction over the claims made in the plaintiffs' amended complaint and it had authority to order discovery. Prior cases cited by the commission do not have res judicata effect on this case because the parties and issues in those cases are different from the parties and issues in this case. The trial court did not abuse its discretion in denying the commission's motion for a protective order.

Affirmed in part, reversed in part, and remanded.

1. INJUNCTIONS — PRELIMINARY INJUNCTIONS.

   A court determining whether to issue a preliminary injunction considers harm to the public interest if the injunction issues, whether harm to the applicant in the absence of temporary relief outweighs the harm to the opposing party if relief is granted, the likelihood that the applicant will prevail on the merits, and a demonstration that the applicant will suffer irreparable injury if the relief is not granted; other considerations surrounding the issuance of a preliminary injunction are whether it will preserve the status quo so that

a final hearing can be held without either party having been injured and whether it will grant one of the parties final relief before a hearing on the merits.

2. CIVIL SERVICE — CIVIL SERVICE COMMISSION — CONSTITUTIONAL DUTIES — DISBURSEMENTS FOR PERSONAL SERVICES — INJUNCTIONS.

The Michigan Constitution requires the Civil Service Commission to approve or disapprove disbursements for all personal services and authorizes any citizen of the state, or a coalition of citizens of the state, to bring an action for injunction or mandamus to restrain a violation of that requirement or to compel the observation of that requirement; in light of such express authorization for injunctive relief, a court deciding whether to issue an injunction need not consider harm to the public interest if an injunction issues or irreparable injury to the applicant if the injunction is denied (Const 1963, art 11, § 5).

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *Mary Ellen Gurewitz*), for Michigan Coalition of State Employee Unions.

*William A. Wertheimer, Jr.,* for International Union, United Automobile, Aerospace & Agricultural Implement Workers of American (UAW) and Lynda Taylor-Lewis.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Susan Przekop-Shaw,* Assistant Attorney General, for the Civil Service Commission.

Before: GRIBBS, P.J., and KELLY and HOOD, JJ.

HOOD, J. The trial court entered a preliminary injunction that enjoined defendant from "implementing, executing, enforcing, or in any way giving effect to Revised Civil Service Rule 4-6" and preserved the status quo that existed before the effective date of the revised rule. The trial court later issued an order denying defendant's motion for a protective order relative to plaintiffs' request for production of docu-

ments. Defendant appeals the injunction and order by leave granted, and we affirm in part, reverse in part, and remand.[1]

## I. FACTS AND PROCEDURAL HISTORY

The facts of this case can be stated simply. Defendant amended Civil Service Rule 4-6 on May 8, 1997, which rule was to be effective on June 1, 1997. The rule addresses the procedures by which state agencies are to contract and pay for services from persons other than classified state employees. The revised rule retained a preauthorization provision and added language and rules to it. That procedure allows an appointing agency to authorize its own disbursements for any preauthorized services without submitting requests to defendant or obtaining defendant's approval. Amended Rule 4-6 also added a new subrule, which established a procedure for "decentralized approval without prior civil service review." Under that subrule, an appointing authority may, under certain circumstances, authorize disbursements for the personal services of person who are not classified employees of the state without the approval of the Department of Civil Service.[2] The revised rule also included a new standard for "mixed contracts" and

---

[1] We note that after we granted leave to appeal, plaintiffs filed an application for leave with the Supreme Court, which application was denied. The Supreme Court, however, ordered this Court to hear and decide this case on an expedited basis. 459 Mich 865 (1998).

[2] Under the "decentralized approval" subrule, an appointing authority is still required to obtain defendant's approval for disbursements if its actions in authorizing a disbursement would result in the layoff of a classified employee, or if the disbursements would exceed $500,000 in one year or $2,000,000 over the life of the contract, or if the appointing authority "has or will enter into six (6) or more separate contracts for substantially the same personal services in one fiscal year."

clarification of defendant's appeal rules and procedures.

Plaintiff Michigan Coalition of State Employees is an alliance of collective bargaining unions representing various groups of classified state employees. The coalition filed an action to enjoin implementation of the revised rule, claiming that several portions of it were unconstitutional and specifically violated Const 1963, art 11, § 5. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), and Lynda Taylor-Lewis intervened as plaintiff. Const 1963, art 11, § 5 provides in part:

> *The Commission shall* classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, *approve or disapprove disbursements for all personal services*, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.
>
> * * *
>
> No payment for personal services shall be made or authorized until the provisions of this constitution pertaining to civil service have been complied with in every particular. Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state. [Emphasis added.]

At the hearing regarding the preliminary injunction, the trial court determined that plaintiffs were likely to succeed on the merits of their claims that the "preauthorization" and "decentralized approval" provi-

sions of the rule violate defendant's constitutional responsibility to approve or disapprove disbursements for personal services. The trial court entered the following preliminary injunction:

> NOW THEREFORE IT IS HEREBY ordered that Defendant Michigan Civil Service Commission, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, be and are hereby enjoined from implementing, executing, enforcing, or in any way giving effect to Revised Civil Service Rule 4-6, adopted on May 8, 1997 and effective on June 1, 1997 and that the status quo which existed prior to the effective date of this revised rule is preserved pending further order of this Court.

Plaintiffs thereafter filed an amended complaint adding several constitutional challenges to the 1993 version of Rule 4-6. Plaintiffs then served defendant with a request for production of documents, seeking virtually all of defendant's documents regarding decisions on disbursements for personal services rendered since October 1, 1993. Defendant moved for a protective order, which was subsequently denied by the trial court.

This Court granted leave to appeal from both the preliminary injunction and the order denying defendant's request for a protective order.

## II. PRELIMINARY INJUNCTION

Defendant first argues that the circuit court erred in granting the preliminary injunction to enjoin it from implementing the 1997 revisions to Rule 4-6.

We review a trial court's decision to grant injunctive relief for an abuse of discretion. *Michigan State*

*AFL-CIO v Secretary of State*, 230 Mich App 1, 14; 583 NW2d 701 (1998).

> In determining whether to issue a preliminary injunction, a court must consider four factors: (1) harm to the public interest if the injunction issues; (2) whether harm to the applicant in the absence of temporary relief outweighs the harm to the opposing party if relief is granted; (3) the likelihood that the applicant will prevail on the merits; and (4) a demonstration that the applicant will suffer irreparable injury if the relief is not granted. Other considerations surrounding the issuance of a preliminary injunction are whether it will preserve the status quo so that a final hearing can be held without either party having been injured and whether it will grant one of the parties final relief before a hearing on the merits. The trial court's decision must not be arbitrary and must be based on the facts of the particular case. [*Id.*, quoting *Thermatool Corp v Borzym*, 227 Mich App 366, 376; 575 NW2d 334 (1998).]

Defendant argues that the "decentralized approval" and the "preauthorization" procedures are constitutional. By making this argument, it is essentially disputing whether there was a sufficient showing by plaintiffs that they were likely to prevail on the merits of their constitutional challenge to those procedures as outlined in revised Rule 4-6.[3]

With regard to the "decentralized approval" subrule, we find that it is facially unconstitutional and that the trial court did not abuse its discretion by finding that plaintiffs are likely to prevail on the merits of their claim regarding this provision. Under the decentral-

---

[3] It appears that defendant is challenging the injunction only as it pertains to the "decentralized approval" and "preauthorization" procedures, and not any other procedures in revised Rule 4-6. Defendant does not specifically address the revised rule as regards the new standard for "mixed contracts" or the clarified appeal rules and procedures.

ized approval procedure, an appointing authority may authorize its own disbursements for the services of outside workers without prior approval by the Department of Civil Service. This conflicts with Const 1963, art 11, § 5, which requires the commission to approve or disapprove *all* disbursements. We cite with approval the reasoning of the Attorney General in OAG, 1979-1980, No 5,663, p 615 (February 14, 1980). There, the Civil Service Commission proposed a rule establishing a classified executive service composed of higher level management positions. Under the regulations accompanying the rule, changes in compensation for the positions would be determined by the appointing authorities. The Attorney General determined that allowing the appointing authorities to fix the compensation of the managers was an unconstitutional delegation of the commission's duties:

> It is a basic principle of law that duties, responsibility or power given by constitution or statute to one public body or officer cannot be delegated to another public body or officer.
>
> "A power definitely assigned by the constitution to one department cannot be surrendered or delegated by that department or vested by statute in another department or agency." 16 CJS Constitutional Law § 105, p 489. [*Id.* at 618-619.]

Because the new decentralized approval procedure allows for self-approval of disbursements to outside contractors, it is unconstitutional on its face. It shifts the constitutional duty to approve disbursements from defendant to the appointing authorities directly.

With regard to the "preauthorization" procedure, however, we conclude the opposite, that it was an abuse of discretion for the trial court to determine

that plaintiffs were likely to prevail on the merits. The "preauthorization" procedure is not facially unconstitutional. Pursuant to that procedure, defendant, through the Civil Service Department, establishes a list of personal services that are automatically deemed appropriate for contract with outside providers. The appointing authority does not have to obtain permission from the department to obtain the services of outside workers when the services are included on the preapproved list. On its face, this procedure does not transfer defendant's constitutional duty to approve or disapprove disbursements for personal services to the appointing agencies. Rather, the duty to approve or disapprove certain services is exercised by defendant when it formulates the list of preauthorized services. And, while plaintiffs may not agree with defendant's determination that a certain service should be automatically approved in accordance with the list, this disagreement is relevant to the correctness of defendant's decision to approve the service for outside persons, and not the improper delegation of approval by defendant. Thus, we believe that plaintiffs are not likely to succeed on the merits of the claim that the "preauthorization" procedures as set forth in revised Rule 4-6 violate Const 1963, art 11, § 5.

For purposes of reviewing the preliminary injunction only, we determine that the trial court properly concluded that plaintiffs were likely to prevail on their constitutional challenge to the "decentralized approval" procedure, although it incorrectly determined that they will likely prevail in their constitutional challenge to the preapproval provision. The trial court did not abuse its discretion in issuing a

preliminary injunction to preclude the effect of the "decentralized approval" procedure. However, to the extent that the preliminary injunction blocked the implementation of the revised preapproval procedure, the trial court abused its discretion in issuing the injunction. We stress, however, that our analysis of these issues is for the purpose of ruling on the propriety of the preliminary injunction only. When the matters are tried, the actual determinations of all of plaintiffs' claims must initially be made by the trier of fact in the trial court.

In addition to arguing that there was not a sufficient showing that plaintiffs were likely to prevail on the merits, defendant also claims that the injunctive relief caused egregious harm to the public interest. We disagree. Const 1963, art 11, § 5 expressly provides for injunctive relief to restrain violations of and enforce its provisions. See *Reed v Civil Service Comm*, 301 Mich 137, 151-152; 3 NW2d 41 (1942); *Dudkin v Civil Service Comm*, 127 Mich App 397, 404-405; 339 NW2d 190 (1983). In this case the trial court preserved the status quo when it issued the injunction. Therefore, we cannot accept an argument that the temporary injunctive relief disrupted the provision of personal services by those outside the classified service or had "a devastating impact on the operation and administration of services that benefit this State." Disbursements for personal services could continue to be made pursuant to the 1993 version of Rule 4-6. Moreover, we also find defendant's claim that the injunction usurped defendant's rule-making power to be without merit. The injunction does not prevent defendant from promulgating any rules. Rather, it merely halted the effect of the 1997 revision

of Rule 4-6 pending a determination whether the rule was contrary to Const 1963, art 11, § 5.

Defendant next argues that no injunction should have been ordered where plaintiffs failed to demonstrate that they would suffer irreparable injury if the injunction was not issued. It argues that "[a] bare allegation of a constitutional violation fails to demonstrate irreparable harm." We disagree because Const 1963, art 11, § 5  specifically provides that "[v]iolation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state." As a matter of first impression, we believe that this language is a constitutional declaration that a violation of Const 1963, art 11, § 5,  in itself, amounts to irreparable harm supporting injunctive relief.

We find support for this ruling by adopting the reasoning of the court in *CSX Transportation, Inc v Tennessee State Bd of Equalization*, 964 F2d 548, 551-552 (CA 6, 1992),  which involved a federal railroad taxation statute:

> Under traditional equitable principles for granting a preliminary injunction in this Circuit, a court must consider (1) whether the moving party has a substantial probability of success on the merits; (2) whether irreparable injury will occur if the injunction is not issued; (3) whether the injunction will have a harmful effect on third parties; and (4) whether the public interest would be served by the injunction. In addition, an injunction generally should not issue if there is an adequate remedy at law. However, since Congress has expressly authorized the granting of injunctive relief to halt or prevent a violation of [the statute], traditional equitable criteria do not govern the issue of injunctions under [the statute]. In order to issue a preliminary injunction under [the statute], a court must determine only whether there is "reasonable cause" to believe that a viola-

tion of [the statute] has occurred or is about to occur. [Citations omitted.]

Because the constitutional provision itself allows for the issuance of an injunction to restrain violations, an additional showing of irreparable harm is not necessary.

We also address defendant's arguments that plaintiffs lacked standing to even bring their action. Const 1963, art 11, § 5 authorizes "any citizen of the state" to bring injunctive proceedings to restrain violations of the amendment. Defendant argues that plaintiff coalition does not qualify because it is not a "citizen." We disagree with defendant's conclusion.

Traditionally, private citizens have no standing to vindicate a public wrong or enforce a public right if they are not hurt in any manner differently than the citizenry at large. *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 634; 537 NW2d 436 (1995) (WEAVER, J.), quoting *Waterford School Dist v State Bd of Ed*, 98 Mich App 658, 662; 296 NW2d 328 (1980). The civil service amendment, Const 1963, art 11, § 5, does not enforce traditional standing principles because by its very language, it allows any citizen to enjoin a violation of the amendment. Thus, any citizen could have brought this action. Logic dictates that an organization made up of members who would have standing to sue in their individual capacities should have standing to sue for its members. See, e.g., *Trout Unlimited, Muskegon-White River Chapter v White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992).

Finally, we would be remiss if we did not note that while the trial court initially questioned whether Const 1963, art 11, § 5 ever allows any subcontract-

ing of jobs by defendant for the purpose of saving money, it did not rule or issue the injunction on that basis and thus reversal on that basis is not necessary.[4] The trial court's implication that subcontracting may be unconstitutional and inappropriate, however, is clearly not supported by law. This Court has held that the Civil Service Commission is authorized to approve disbursements for services performed by persons outside the classified service for the purposes of efficiency and economy. *Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v Civil Service Comm*, 223 Mich App 403, 406; 566 NW2d 57 (1997); *Michigan State Employees Ass'n v Civil Service Comm*, 141 Mich App 288, 292-293; 367 NW2d 850 (1985).

### III. PROTECTIVE ORDER

Plaintiffs' amended complaint challenged the constitutionality of portions of the 1993 version of Rule 4-6. Plaintiffs served defendant with a request for production of documents related to those allegations. Defendant argues that the trial court did not have subject-matter jurisdiction over the issues in the amended complaint and, therefore, it improperly ordered it to comply with the request for production of documents. We disagree that the trial court abused its discretion by failing to grant defendant's motion for a protective order, and we find that the trial court had subject-matter jurisdiction over the case.

---

[4] The trial court also did not issue the preliminary injunction on the basis of any due process violations, and thus we find it unnecessary to address defendant's arguments that because no due process rights have been violated, no injunction should have been issued.

Defendant's argument that res judicata applies to bar the trial court from asserting subject-matter jurisdiction is basically flawed. The principles of res judicata do not divest a court of subject-matter jurisdiction.

> "[J]urisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action . . . ." [*Bowie v Arder*, 441 Mich 23, 39; 490 NW2d 568 (1992), quoting *Joy v Two-Bit Corp*, 287 Mich 244, 253-254; 283 NW 45 (1938).]

The purpose of res judicata on the other hand "is to avoid relitigation of claims." *In re Hill*, 221 Mich App 683, 689; 562 NW2d 254 (1997). It operates to bar subsequent actions between the same parties when the facts or evidence essential to the maintenance of the two lawsuits are identical and the issues and parties or privies are identical. *Id.* at 689-690. It is a principle of finality, see *Topps-Toeller, Inc v Lansing*, 47 Mich App 720, 727; 209 NW2d 843 (1973),  not of a court's abstract power to hear a case.

We emphasize that *Int'l Union, supra, Michigan State Employees Ass'n, supra,* and this Court's order in *United Technical Employees Ass'n v Civil Service Comm*, unpublished order of the Court of Appeals, entered May 20, 1998 (Docket No. 207074), have no res judicata effect on this case. The parties in those cases are not *identical* to the parties in this case, and the issues addressed in those cases are not the same as the issues in these cases, specifically none of those

cases addressed the constitutionality of the "decentralized approval" and preauthorization procedures.

We also disagree with defendant's argument that the trial court lacked subject-matter jurisdiction because plaintiffs had failed to exhaust their administrative remedies. Defendant's claim that plaintiffs had to exhaust all administrative remedies in order to challenge the decisions made under the 1993 version of Rule 4-6[5] fundamentally misses the point. Plaintiffs are not attempting to challenge any particular decisions regarding approval of disbursements for outside services, but are challenging the constitutionality of the procedures themselves. The administrative remedies are not in place for that purpose, but are in place to allow for challenges to the decisions themselves. Thus, defendant's argument in this regard is disingenuous.

Finally, we note that even if we agreed with defendant's argument that plaintiffs lacked standing, which we do not, a lack of standing does not deprive a trial court of subject-matter jurisdiction. *Bowie, supra* at 49; *Altman v Nelson,* 197 Mich App 467, 476; 495 NW2d 826 (1992).

The trial court had subject-matter jurisdiction in this case and, therefore, it had authority to order discovery. Defendant does not challenge the terms of the discovery order. Accordingly, we affirm the trial court's refusal to grant a protective order and its accompanying order that discovery should proceed.

---

[5] According to defendant, there were approximately eleven thousand decisions made under the 1993 version of Rule 4-6 before the time of this suit.

### IV. CONCLUSION

The trial court did not abuse its discretion in entering a preliminary injunction and preserving the status quo with regard to revised Rule 4-6, specifically with regard to the decentralized approval procedure. However, to the extent that the preliminary injunction blocked the implementation of the revised preapproval procedure, we find an abuse of discretion and remand to the trial court to vacate the injunction as it pertains to that portion of the rule. We also conclude that the trial court had subject-matter jurisdiction of plaintiffs' claims as alleged in their amended complaint and, thus, the trial court properly ordered that discovery take place.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.