**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 27, 2001**

MICHIGAN COALITION OF STATE
EMPLOYEE UNIONS,

    Plaintiff-Appellee,

and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW) and LYNDA
TAYLOR-LEWIS,

    Intervening
    Plaintiffs-Appellees,

v                         No. 115579

MICHIGAN CIVIL SERVICE COMMISSION,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

    This case presents the question whether a party alleging

a violation of Const 1963, art 11, § 5, the provision of the

Michigan Constitution related to the state civil service

system, must make a particularized showing of irreparable harm to obtain a preliminary injunction against the alleged violation. We conclude that such a showing is required as one condition of obtaining a preliminary injunction. Accordingly, we vacate the preliminary injunction entered by the circuit court in this case in its entirety. Notably, we are not considering the question whether an actual constitutional violation, which could be remedied by entry of a permanent injunction, has occurred.

## I. Factual and Procedural Background

This case arises from the adoption by defendant Civil Service Commission on May 8, 1997, of amended Civil Service Rule 4-6, with a stated effective date of June 1, 1997. While the details of this rule are not important to our analysis, the rule generally governs circumstances in which state agencies subject to civil service regulation are allowed to contract and pay for personal services from persons who are not state civil service employees and procedures to be followed in that regard. The rule contains two provisions that have been alleged by plaintiffs to be violative of Const 1963, art 11, § 5.[1] First, there is a "preauthorization"

---

[1] Section 5 generally governs the responsibilities and duties of defendant Civil Service Commission. Central to the present case is the last paragraph of this constitutional provision, which states:

(continued...)

2

provision that would allow a state agency to authorize disbursements for any services on a preapproved list without submitting a specific request for approval to the Civil Service Commission. Second, the amended rule would add a new provision for "decentralized approval" of contracts and payments for personal services rendered by persons other than state civil service employees in certain situations.

In June 1997, the trial court granted plaintiffs a preliminary injunction that prohibited the Civil Service Commission "from implementing, executing, enforcing, or in any way giving effect" to Civil Service Rule 4-6. Critical to the issue presently before this Court, the trial court opined in its oral ruling on the preliminary injunction motion that a showing of "some particularized injury or damage" was *not* necessary to obtain a preliminary injunction against an alleged violation of Const 1963, art 11, § 5. The trial court stated that "if a violation of [§ 5] occurs, my reading is that would be irreparable harm, not just to the Plaintiffs, but to every citizen of the state."

---

[1](...continued)
> No payment for personal services shall be made or authorized until the provisions of this constitution pertaining to civil service have been complied with in every particular. Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.

In July 1998, the Court of Appeals granted defendant's application for leave to appeal from the issuance of the preliminary injunction, and eventually affirmed in part and reversed in part.[2] The Court of Appeals opined that the "decentralized approval" subrule of Civil Service Rule 4-6 was "facially unconstitutional"[3] and that the trial court did not

[2] While we recognize that the order of the Court of Appeals granting leave also stayed further proceedings in the trial court, over a year passed between the issuance of the preliminary injunction and that Court of Appeals order. It is undisputed that, during this entire period from June 1997 to July 1998, the preliminary injunction remained in effect. While there may be reasons to explain the delay, it does seem troubling that the parties were subjected to such a long period of uncertainty and that a preliminary injunction against an officially promulgated governmental rule remained in effect for so long without any decision on the merits. We are today issuing proposed changes to the Michigan Court Rules to establish limitations on the period in which a preliminary injunction may be in effect pending final resolution of a case. The proposed changes to the court rules are attached as an appendix to this opinion.

[3] We note that the Court of Appeals later in its opinion seemed to disavow reaching a final or ultimate conclusion on the constitutional issues:

> For purposes of reviewing the preliminary injunction only, we determine that the trial court properly concluded that plaintiffs were likely to prevail on their constitutional challenge to the "decentralized approval" procedure, although it incorrectly determined that they will likely prevail in their constitutional challenge to the preapproval provision. . . . We stress, however, that our analysis of these issues is for the purpose of ruling on the propriety of the preliminary injunction only. When the matters are tried, the actual determinations of all plaintiffs' claims must initially be made by the trier of fact

(continued...)

4

abuse its discretion by finding that plaintiffs were likely to prevail on that provision. 236 Mich App 96, 102; 600 NW2d 362 (1999). However, the Court of Appeals concluded that the "preauthorization" provisions of the challenged civil service rule were not facially unconstitutional and that the trial court abused its discretion by enjoining those provisions. 236 Mich App 103-105.[4]

Central to the present issue, the Court of Appeals rejected defendant's position that plaintiffs should not have been granted any preliminary injunction whatsoever because of their failure to show irreparable harm. The Court of Appeals stated:

> Defendant next argues that no injunction should have been ordered where plaintiffs failed to demonstrate that they would suffer irreparable injury if the injunction was not issued. *It argues that "[a] bare allegation of a constitutional violation fails to demonstrate irreparable harm." We disagree* because Const 1963, art 11, § 5 specifically provides that "[v]iolation of any of the provisions hereof may be restrained or observance compelled by any citizen of the state." As a matter of first impression, we believe that this language is a constitutional declaration that a violation of Const 1963, art 11, § 5, in itself, amounts to irreparable harm supporting injunctive relief. [236 Mich App 106 (emphasis added).]

---

[3](...continued)
in the trial court. [236 Mich App 104-105.]

[4] Given that plaintiffs have not filed a cross-appeal, the portion of the Court of Appeals opinion reversing part of the trial court's preliminary injunction is not before us for review.

5

While it may have been more clearly stated, the emphasized language indicates that "a bare allegation of a constitutional violation" *is* sufficient to show irreparable harm.  In other words, the Court of Appeals concluded that a showing of irreparable harm to a particular party is not required for a preliminary injunction against an alleged violation of § 5.

We granted defendant's application for leave to appeal, "limited to the issue whether a showing of irreparable harm is required to justify a preliminary injunction against an alleged violation of section 5."  463 Mich 925 (2000).

## II.  Analysis

We review a trial court's grant of injunctive relief for an abuse of discretion.  See, e.g., *Holly Twp v Dep't of Natural Resources,* 440 Mich 891 (1992) (explaining that "granting of injunctive relief is within the sound discretion of the trial court, although the decision must not be arbitrary and must be based on the facts of the particular case").

Ordinarily, the first requirement that a party must meet to request a trial court to grant any type of relief, including an injunction, is that the party have "standing" to request the relief.  This means that a party is normally required to have a sufficiently concrete interest in bringing a case that it can be expected to provide effective advocacy.

6

*Allstate Ins Co v Hayes,* 442 Mich 56, 68; 499 NW2d 743 (1993).

Said another way, standing has been described as a requirement that a party ordinarily must have a substantial personal interest at stake in a case or controversy, as opposed merely to having a generalized interest in the same manner as any citizen. *House Speaker v Governor,* 443 Mich 560, 572; 506 NW2d 190 (1993).[5] Recently, we have described it even more

---

[5] Justice Powell, in his concurrence in *United States v Richardson,* 418 US 166, 192; 94 S Ct 2940; 41 L Ed 2d 678 (1974), articulated reasons for the requirement of standing, apart from assuring effective advocacy in a particular case:

> [W]e risk a progressive impairment of the effectiveness of the federal courts if their limited resources are diverted increasingly from their historic role to the resolution of public-interest suits brought by litigants who cannot distinguish themselves from all taxpayers or all citizens. The irreplaceable value of the power [of judicial review] articulated by Mr. Chief Justice Marshall lies in the protection it has afforded the constitutional rights and liberties of individual citizens and minority groups against oppressive or discriminatory government action. It is this role, not public esteem for the federal courts and has permitted the peaceful coexistence of the countermajoritarian implications of judicial review and the democratic principles upon which our Federal Government in the final analysis rests.

> The considerations outlined above underlie, I believe, the traditional hostility of the Court to federal taxpayer or citizen standing where the plaintiff has nothing at stake other than his interest as a taxpayer or citizen. It merits noting how often and how unequivocally the Court has expressed its antipathy to efforts to convert the Judiciary into an open forum for the resolution of political or ideological disputes about the

(continued...)

succinctly by indicating that the concept of standing ordinarily requires that a party have "an interest distinct from that of the public." *Lee v Macomb Co,* 464 Mich ___; ___ NW2d ___ (2001).

It is this requirement that unquestionably is targeted by § 5 when it provides that "[v]iolation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state." Plaintiffs further contend, however, that more than this was targeted by § 5's language; that not only did these words eliminate usual standing requirements, but they also should be read to mean that the usual requirement that no preliminary injunction should issue unless the plaintiff could

---

[5](...continued)
performance of government.

In a similar vein, the United States Supreme Court observed in *Lewis v Casey,* 518 US 343, 349; 116 S Ct 2174; 135 L Ed 2d 606 (1996):

> The requirement that an inmate alleging a violation of *Bounds* [*v Smith,* 430 US 817; 97 S Ct 1491; 52 L Ed 2d 72 (1977),] must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches. It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

demonstrate a showing of irreparable harm was eliminated.

It is important to be clear that the present appeal involves only the requirements for *preliminary* injunctive relief, an extraordinary remedy that is sometimes granted before a case is even decided on the merits. It is beyond reasonable dispute that a trial court has the authority, and, in appropriate cases, the duty, to enter *permanent* injunctive relief against a constitutional violation. See, e.g., *Sharp v Lansing,* 464 Mich ___; ___ NW2d ___ (2001) (discussing availability of injunctive relief against a constitutional violation). Moreover, the plain language of § 5 provides that "[v]iolation of any of the provisions here may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state." Thus, it is plain that any Michigan citizen may bring an action in a state trial court against an alleged violation of § 5 and that, if the trial court in ruling on the merits of the case at its final resolution concludes a violation has occurred, that violation may be remedied by appropriate injunctive or mandamus relief such as a permanent injunction. The only question we are considering is whether a plaintiff may also obtain a preliminary injunction against the alleged constitutional violation before the case is even decided on the merits without making a particularized showing of irreparable harm.

9

To evaluate plaintiff's position regarding the requirements for a preliminary injunction in the present context, it is appropriate to begin our analysis by considering the historical background of Const 1963, art 11, § 5.

It is generally accepted that the state's modern civil service system had its genesis in the 1936 Report of the Civil Service Study Commission. *Council No 11, AFSCME v Civil Service Comm,* 408 Mich 385, 397; 292 NW2d 442 (1980). That commission issued "a 94-page ringing condemnation of the longstanding 'spoils system', or 'patronage system'[6] of state personnel practices and detailed recommendations for the

---

[6] The report provided the following description of the prior "spoils system" of state employment:

> The spoils system presupposes the existence of government jobs to be filled with loyal party workers who can be counted on not to do the state job better than it can be done by others, but rather to do the party work or the candidate work when elections roll around. The state office buildings are nearly empty during political conventions, and state money has always been used—indirectly of course—to enable state employees to move about the state and keep political fences in repair.

> It is impossible to estimate the loss to the state of this kind of political activity, but the most inexperienced know that the amount is considerable. Not only is the regular work of the state interrupted or interfered with, but its services and funds are put at the disposal of political parties. [*Id.* at 397 n. 10]

10

enactment of legislation to establish a state civil service system." *Id.* The following year, the Legislature enacted civil service legislation in 1937 PA 346.

However, the bulk of the civil service reforms enacted in 1937 were gutted during the next regular session of the Legislature in 1939 when, "obviously dissatisfied with reform that had been wrought, the newly elected anti-civil service Legislature adopted a group of bills designed primarily to destroy the civil service system which had just been established. . . ." *Council No 11, supra* at 399.[7] Fed up, the response of the people of the state in 1940 was to place on the ballot and pass a constitutional amendment,[8] described formally as Const 1908, art 6, § 22. This amendment included provisions that defined the state employees to be included in the state civil service, provided for the composition and

---

[7] Among other provisions, the 1939 legislation reduced the scope of the state classified civil service, reduced the appropriation for the Civil Service Commission, and provided increased employment preferences for former state employees.

[8] As this Court explained in *Council No 11, supra* at 400-401:

> Finally, in 1940, apparently dissatisfied with four years of political maneuvering and legislative advance and retreat on the civil service system issue, the people of Michigan adopted a constitutional amendment establishing a constitutional state civil service system, superseding the 1939 legislation.

11

duties of the Civil Service Commission, and, in language that has been continued in our present Michigan Constitution in § 5, provided that "[v]iolation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state." Const 1908, art 6, § 22.

Given this background, we then must ask what exactly was it that the people would have understood they were doing in passing this amendment, because it is this understanding that is the key to its meaning.  In particular, it is this inquiry that will answer our question with respect to how expansively the citizens can be understood to have changed the rules, not only regarding standing, but also the rules regarding the irreparable injury requirements for securing a preliminary injunction.

To begin this probe, basic doctrines regarding constitutional construction are useful to recall.  Initially, of course, if the language of a constitutional provision is plain, it is that meaning we give to it.  As was stated in *Peterman v Dep't of Natural Resources,* 446 Mich 177, 184; 521 NW2d 499 (1994), we examine how constitutional language was "understood by its ratifiers at the time of its adoption." This is straightforward.  Yet, what if the constitutional language had no plain meaning, but rather is a technical legal

12

term or a phrase of art?  In answering this, the great constitutional law scholar and member of this Court in the nineteenth century, Justice Thomas M. Cooley, said that in construing technical legal terms used in a constitution "we must suppose these words to be employed in their technical sense."  1 Cooley, Constitutional Limitations (8th ed), p 132).  Paying heed to this rule, this Court applied this principle to the technical legal phrase "assistance of counsel" in *People v Pickens,* 446 Mich 298; 521 NW2d 797 (1994):

> [T]he phrase "assistance of counsel," by necessity, will not be defined in great detail in the constitution.  Nevertheless, it is one of many terms that has "acquired a well-understood meaning, which the people must be supposed to have had in view in adopting them."  [*Id.* at 310, quoting 1 Cooley, *supra* at 132.]

In a similar vein, this Court observed in *Walker v Wolverine Fabricating & Mfg Co, Inc,* 425 Mich 586, 596-597; 391 NW2d 296 (1986), that one method of interpreting constitutional language that is "in no way a part of the common vocabulary" (which would surely apply to the phrase "injunctive proceedings") is to "survey contemporaneous judicial decisions and legal commentaries for evidence of a consensus within the legal community regarding the meaning of a term."  This, then, is the rule: if a constitutional phrase is a technical legal term or a phrase of art in the law, the phrase will be given the meaning that those sophisticated in the law understood at

13

the time of enactment unless it is clear from the constitutional language that some other meaning was intended.[9]

Let us then examine what was understood in the law in 1940 by the phrase "injunctive proceedings."  The traditional rules governing "injunctive proceedings" were well established by 1940 including a requirement of a showing of irreparable injury to the person or entity seeking the injunction as a condition for obtaining a preliminary injunction or, as it was often termed at the time, an interlocutory injunction.  Indeed, a 1905 treatise on injunctions provided that an interlocutory injunction will not be allowed "where the injury which will result from the invasion of that right is not irreparable."  1 High, Injunctions (4th ed), § 22, p 367.  Discussion of this point in Michigan case law predating 1940 also indicates that a showing of irreparable harm is a requirement for the issuance of a preliminary injunction.  See

---

[9] It is noteworthy that the Michigan Legislature has expressly adopted the same basic principle in connection with the interpretation of its work, statutes, namely, that common words and phrases are to be understood in conformity with their common meaning, but that technical words and phrases should be interpreted in accordance with their technical meaning:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. [MCL 8.3a.]

14

*Baltic Mining Co v Houghton Circuit Judge,* 177 Mich 632, 643; 144 NW 209 (1913), where this Court indicated that a preliminary injunction may be granted "if it appears that there is a real and substantial question between the parties, to be investigated in a court of equity, and, in order to prevent irremedial injury to the complainant*,* before his claims can be investigated, it is necessary to prohibit any change in the conditions and relations of the property and of the parties during the litigation" (citation omitted). Similarly, in *B Siegel Co v Wayne Circuit Judge,* 183 Mich 145, 154; 149 NW 1015 (1914), this Court stated that, for a landlord to obtain a preliminary injunction against structural changes to a building, it was necessary to show an "irreparable injury by reason of the damage done to the freehold through changes in the building impairing its structural safety."[10]

---

[10] Notably, other cases predating the adoption of the 1940 constitutional amendment that do not expressly state that a showing of irreparable harm is a requirement for obtaining a preliminary injunction nevertheless include language indicating that such a requirement was commonly understood to exist within the legal community. For example, in *Grand Rapids E R Co v Calhoun Circuit Judge,* 156 Mich 419, 421-422; 120 NW 1004 (1909), this Court found no abuse of discretion in a circuit court's decision to dissolve a preliminary injunction where the circuit court concluded that the action sought to be enjoined would not cause irreparable injury to the moving party. Similarly, *Heliker v Heliker,* 184 Mich 657, 659; 151 NW 757 (1915), noted that a preliminary injunction against cutting trees on a parcel of land was issued after the

(continued...)

Thus, it is clear that in 1940 it was beyond dispute in the legal community that a party needed to make a particularized showing of concrete irreparable harm or injury in order to obtain a preliminary injunction. Moreover, there is no basis to conclude that the requirements to secure a preliminary injunction changed in any pertinent way between the adoption of the amendment in 1940 and the adoption of its successor, § 5, in the present Michigan Constitution in 1963, or even up to this day. The requirement of a showing of irreparable harm remains as it did a century ago. In our latest statement on this issue in *Michigan State Employees Ass'n v Dep't of Mental Health,* 421 Mich 152, 157-158; 365 NW2d 93 (1984), this Court reiterated the requirement of a showing of irreparable harm as a prerequisite for a preliminary injunction, explaining that it was a requirement for the issuance of a preliminary injunction to demonstrate "that the applicant will suffer irreparable injury if a preliminary injunction is not granted."[11]

---

[10](...continued)
filing of a complaint alleging "loss and irreparable injury to the inheritance and great damage to the complainant."

[11] We note that *Michigan State Employees Ass'n* also arose in the civil service context. In the course of reversing a preliminary injunction granted in favor of a discharged civil service employee, this Court noted that its "holding addresses the required showing of irreparable injury necessary to support the issuance of a preliminary injunction." *Id.* at
(continued...)

Accordingly, we conclude that a particularized showing of irreparable harm was, and still is, as our law is understood, an indispensable requirement to obtain a preliminary injunction. Moreover, the people, in causing the Michigan Constitution to be amended in 1940, evidenced no desire, as they had done with standing, to modify the traditional rules that had pertained with regard to this requirement for a preliminary injunction. Therefore, when considering the request for a preliminary injunction in this matter, the trial court and the Court of Appeals were in error in granting any preliminary injunction without a showing of concrete irreparable harm to the interests of a party before the Court.

We underscore, in accordance with the limited grant of leave in this case, that we are concerned only with the requirements for a *preliminary* injunction. This opinion expresses no view about the proper resolution of the merits of this case, i.e., whether Civil Service Rule 4-6 is violative

---

[11](...continued)
135. This Court stated that such a preliminary injunction "should issue only in extraordinary circumstances." *Id.* at 166.

The Court also outlined that, in addition to the required demonstration of irreparable harm to the moving party in the absence of a preliminary injunction, a trial court should consider (1) harm to the public interest if such an injunction is issued; (2) whether harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, and (3) the strength of the moving party's showing that it is likely to prevail on the merits. *Id.* at 157-158.

in whole or in part of § 5.

### III. Response to Dissent

Contrary to the possible implication of the dissent, this opinion does not preclude the ability to obtain any injunctive relief when the Civil Service Commission acts in violation of § 5. Nothing of the sort has happened. This appeal does not involve what relief is available when, after a hearing on the merits, the court is confronted with whether to issue a permanent injunction. Rather, we are concerned with the *preliminary injunction,* an injunction that is sought *before* the parties have had their day in court. *Then,* in that situation and that situation alone, the petitioner must demonstrate irreparable injury. This is utterly unexceptional. It has, indeed, been our law, as this opinion has taken pains to point out, unvaryingly since Michigan became a state. It is, we believe, the law in every other state of the union as well.

Thus, the dissent is incorrect in describing our approach as being "to completely destroy the power of 'any citizen' to compel constitutional compliance." *Post*, p 10. Nothing in this opinion restricts, in any way, the authority of a trial court to grant appropriate relief, including entry of a permanent injunction, if a Michigan citizen establishes an actual violation of § 5 when a case is decided on the merits.

18

Rather, pursuant to the plain language of § 5 stating that "[v]iolation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state, "*any* Michigan citizen may bring suit to challenge an alleged violation of this provision of the Michigan Constitution without meeting ordinary standing requirements. Further, if the trial court decides the merits of the case in favor of the plaintiff, the trial court may then enter a permanent injunction or other appropriate relief against the violation-even in the absence of irreparable harm to any person. This is because § 5 expressly provides the authority to restrain a violation of its provisions. Thus, if a trial court, in resolving the merits of a case, determines that a violation of § 5 has actually occurred, the trial court necessarily has authority to grant injunctive or mandamus relief against the violation. However, by definition, a decision on a *preliminary* injunction is made before there is even a determination of the merits of a case. This opinion merely reaffirms that a plaintiff alleging a violation of § 5 may not obtain *preliminary* injunctive relief, which in the ordinary course of things would be addressed before a constitutional violation has been established, without meeting the traditional requirements for this extraordinary relief.

Further, we are *not* "implying that irreparable harm must

have already occurred in order for [preliminary] injunctive relief to be available." *Post,* p 6. Rather, as stated earlier, we recognize that a preliminary injunction may be appropriately entered if it is demonstrated that "the applicant will suffer irreparable injury" absent the preliminary injunction (and the other appropriate prerequisites to the grant of a preliminary injunction are met), p 17, quoting *Michigan State Employees Ass'n, supra.* In other words, a trial court may properly grant a preliminary injunction if a party shows that it will otherwise imminently suffer irreparable harm and the other proper grounds for such relief are satisfied.

Finally, unlike the dissent, we see nothing "inconsistent," *post,* p 13, n 7, in recognizing that any Michigan citizen has "standing" to challenge an alleged violation of § 5, but that a party doing so must make a particularized showing of irreparable harm in order to obtain a *preliminary* injunction against the alleged violation. As we have discussed, the plain language of § 5 necessarily requires the courts to allow any Michigan citizen to challenge an alleged violation of this constitutional provision and to obtain relief if an actual violation is found when the case is resolved on the merits. However, a preliminary injunction before there is a decision on the merits—and, thus, before it

20

can be said that a violation of § 5 has been established in court—is an extraordinary type of relief available only with a showing of irreparable harm. It is no more "inconsistent" to draw this distinction than it is to recognize that there are multitude of suits between private litigants in which both sides obviously have standing to litigate the case, but neither has any basis to obtain a preliminary injunction against the other.

IV. Conclusion

We conclude that the lower courts erred in viewing a particularized showing of irreparable harm as unnecessary to obtaining a preliminary injunction against an alleged violation of Const 1963, art 11, § 5. In other words, we read nothing in § 5 that would suggest that, in the civil service realm, the actions of the government are any more susceptible to preliminary injunctive relief than are the actions of any other private or public entity. Pending the resolution of a suit claiming a violation of § 5, a party to such a suit may obtain a preliminary injunction only after satisfying all the requirements traditionally required for this extraordinary relief. Accordingly, the circuit court abused its discretion by granting a preliminary injunction in the present case in the absence of such a showing. Thus, we reverse the Court of Appeals in part, vacate the preliminary injunction entered by

21

the circuit court in this case in its entirety, and remand this case to the circuit court for any appropriate proceedings consistent with this opinion.

CORRIGAN, C.J., and YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

01-XX

Proposed Amendments of
Rules 3.310, 7.208, and 7.213
of the Michigan Court Rules

_____


On order of the Court, this is to advise that the Court is considering amendments of Rules 3.310, 7.208, and 7.213 of the Michigan Court Rules. Before determining whether the proposal should be adopted, changed before adoption, or rejected, this notice is given to afford any interested person the opportunity to comment on the form or the merits of the proposal. We welcome the views of all who wish to address the proposal or who wish to suggest alternatives. Before adoption or rejection, this proposal will be considered at a public hearing by the Court. The Clerk of the Court will publish a schedule of future public hearings.

Publication of this proposal does not mean that the Court will issue an order on the subject, nor does it imply probable adoption of the proposal in its present form.

[The present language would be amended as indicated below.]

**Rule 3.310       Injunctions**

(A)  Preliminary Injunctions.

(1) - (4) [Unchanged.]

(5)  If a preliminary injunction is granted, the court shall promptly schedule a pretrial conference. The trial of the action on the merits must be held within 6 months after the injunction is granted, unless good cause is shown or the parties stipulate to a longer period. The court shall issue its decision on the merits within 56 days after the trial is completed.

(B) - (I) [Unchanged.]


**Rule 7.208 Authority of Court or Tribunal Appealed From**

(A)  Limitations. After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from

except

(1)  by order of the Court of Appeals,

(2)  by stipulation of the parties,

(3)  after a decision on the merits in an action in which a preliminary injunction was granted, or

(4)  as otherwise provided by law.

In a criminal case, the filing of the claim of appeal does not preclude the trial court from granting a timely motion under subrule (B).

(B) – (I) [Unchanged.]


**Rule 7.213 Calendar Cases**

(A) – (B) [Unchanged.]

(C) Priority on Calendar.  The priority of cases on the session calendar is in accordance with the dates of the clerk's notice to the parties, except that precedence shall be given to interlocutory criminal appeals, child custody cases, and interlocutory appeals from the grant of a preliminary injunction.

(D) – (E) [Unchanged.]


Staff Comment:  The proposed amendments of Rules 3.310, 7.208, and 7.213 were announced by the Supreme Court in *Michigan Coalition of State Employee Unions* v *Michigan Civil Service Commission*, Docket No. 115579 (decided July  , 2001). The amendments would require trial courts to expeditiously decide actions in which preliminary injunctions have been granted, and would allow them to proceed even if the Court of Appeals has granted interlocutory leave to appeal. Similarly, if the Court of Appeals granted leave to review entry of a preliminary injunction on an interlocutory basis, that court would be required to give priority to resolution of the appeal.


The staff comment is published only for the benefit of the bench and bar and is not an authoritative construction by the Court.

24

_____

> Publication of this proposal does not mean that the Court will issue an order on the subject, nor does it imply probable adoption in its present form. Timely comments will be substantively considered, and your assistance is appreciated by the Court.

_____


A copy of this order will be given to the secretary of the State Bar and to the State Court Administrator so that they can make the notifications specified in MCR 1.201. Comments on this proposal may be submitted in writing or electronically to the Supreme Court Clerk by November 1, 2001. P.O. Box 30052, Lansing, MI 48909, or MSC_clerk@jud.state.mi.us. When submitting a comment, please refer to File No. 01-XX.

MICHIGAN COALITION OF STATE
EMPLOYEE UNIONS,

    Plaintiff-Appellee,

and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW) and LYNDA
TAYLOR-LEWIS,

    Intervening
    Plaintiffs-Appellees,

v                                    No. 115579

MICHIGAN CIVIL SERVICE
COMMISSION,

    Defendant-Appellant.
_____

CAVANAGH, J. (*dissenting*).

    The majority provides interesting commentary on the civil
service system.  Yet, it skims only the surface of the issues
necessary to the resolution of this case, and while seeming to
address a narrow issue, leaves behind a rule that could limit

the power that the people have reserved in themselves.[1]  In my view, Const 1963, art 11, § 5 clearly preserves the power of the people to restrain the actions of the Civil Service Commission whenever the provisions of the constitution are not complied with.  I agree with the courts below that a showing of a constitutional violation may constitute irreparable harm to every citizen of this state, and that each citizen may not only bring injunctive or mandamus proceedings, but also has a meaningful opportunity to obtain relief.  Further, I would hold that Const 1963, art 11, § 5 does not limit the class of citizens who may obtain relief in the form of a preliminary injunction.  Therefore, I dissent.

I

The majority spends pages upon pages discussing the accepted maxim of constitutional construction that the constitution should be given the meaning intended by the people.  Additional pages are dedicated to establishing that the existence of irreparable harm is traditionally a precondition to the issuance of a preliminary injunction.

---

[1]  Despite its attempts to leave the issue narrow, however, the majority expands its opinion to include discussion of Michigan's Rules of Court.  Because of how the majority decides this case, the opinion is not affected by the proposed court rule incorporated into the majority's appendix.  My comments about the substantive propriety of the court rule will be reserved for discussion as part of the standard procedure for implementing court rule changes.

Yet, the majority's observations are somewhat puzzling since neither the trial court nor the Court of Appeals held that Const 1963, art 11, § 5 eliminates the requirement that irreparable harm must be shown.  To the contrary, the courts below held that a constitutional violation may cause irreparable harm.

The majority errs at the outset by determining that the rule that irreparable harm must be shown somehow forms a basis for vacating the preliminary injunction issued by the trial court.  Yet, though I agree with the majority that irreparable harm must be shown, I believe that the majority is simply wrong in basing reversal on the theory that "when considering the request for a preliminary injunction in this matter, the trial court and the Court of Appeals were in error in granting any preliminary injunction without a showing of concrete irreparable harm to the interests of the parties before the Court."  Slip op at 18.  Rather, both courts explained why irreparable harm to the parties would exist in this case and clearly found there to be a clear likelihood of success on the claim of a constitutional violation.  The trial court in fact discussed the issue at great length and the trial court opinion reveals that the court understood the requirements of a preliminary injunction.  The following excerpt unequivocally shows that the trial court validly

exercised its discretion and found concrete irreparable harm to the interests of the parties before the Court:

> Irreparable harm, there has been a zealous plea by the Commission, Counsel for the Commission that these Plaintiffs have to show, as I hear the argument, some particularized harm. Given that none of their positions are immediately scheduled to be eliminated, they cannot make that showing.

> * * *

> I understand the Plaintiffs claim, assert their positions are affected, but as I view this case, they stand before this Court as citizens of this state, who challenge the conduct of the Commission in light of its constitutional obligations. And, unless I read this constitutional language as having no meaning whatsoever, a part of Article 11, Section 5 of the 1963 Constitution says very clearly violation of any of the provisions hereof may be restrained or observance compelled by injunction, injunctive or mandamus proceedings brought by any citizen of the state. No qualification there.

> And, that clearly means does somebody have to show some particularized injury or damage as a result. I don't think so. Because, *every citizen of this state is entitled [to] have a civil service system that works, that does the state's business and does it fairly, does it honestly, does it economically, and we're all affected. So to that extent, to the extent that any contract is entered to [sic] in violation of this constitutional provision, that any position is abolished in violation of the constitutional provision, every citizen of this state is damaged.* And, I believe that I am obligated here to effectuate that language certainly, that language takes precedence over . . . some of these other holdings.[2]

> I mean, we need to keep in mind . . . this came about because the Legislature did not act

---

[2] Citations omitted.

4

sufficiently in the view of Michigan citizens to protect their interest in having a strong system of merit in selecting public employees, but in effect allowed, and apparently had been present for many, many years, a spoils system. And so, they weren't just satisfied to make changes and create [Const 1963, art 11, § 5], they said not only are we making changes, we are going to empower any citizen of this state by an action, essentially, at any time to assure that this provision is complied with.

*So in effect, if a violation of this occurs, my reading is that would be irreparable harm, not just to the Plaintiffs, but to every citizen of this state and the Plaintiffs or someone else, the citizens of Bay City or the factory workers of General Motors Corporation can file an action to bar this unlawful, alleged unlawful activity*. And in this case, I'm satisfied that there is a sufficient showing the citizens would be harmed, because it appears that at least one or more of the provisions of Article 11, Section 5 are not complied with under the rules as proposed. [Emphasis added.]

This language demonstrates that the trial court's holding was not that plaintiffs are relieved from showing irreparable harm, but that a constitutional violation irreparably harms every individual in this state. In other words, the harm resulting in an art 11, § 5 context does not flow from an action taken by the Civil Service Commission against a specific individual as would be the case under the commission's view. Instead, the harm flows from the violation itself, and flows to each individual citizen.

The majority holds that any citizen may obtain permanent injunctive relief after a constitutional violation occurs, but

5

that a citizen may not obtain a preliminary injunction to enjoin the probable harm that could result from a constitutional violation. The majority correctly recognizes that the derogation of a constitutional right has been held to be irreparable harm for the purposes of determining injunctive relief. Slip op at 9-10. Thus, the type of injury wrought by a constitutional violation can clearly be irreparable. The majority's error lies in implying that irreparable harm must have already occurred in order for injunctive relief to be available. The fundamental flaw in this logic is that the point of a preliminary injunction is to preserve the status quo ante and prevent the harm from occurring until a decision may be rendered on the merits. In other words, preliminary injunctive relief is designed to meet the threat of a future wrong. 42 Am Jur 2d, Injunctions, § 2, § 10. In any event, an applicant seeking preliminary injunctive relief need only establish a likelihood of success on the merits. See *MSEA v Dep't of Mental Health*, 421 Mich 152; 365 NW2d 93 (1984).

Further, by precluding preliminary relief in cases where a citizen alleges that irreparable harm will result if a constitutional violation is allowed to occur, the majority essentially rewrites the constitution as providing that "violation of any of the provisions hereof may be restrained or compelled by any citizen seeking *permanent* injunctive or

6

mandamus relief." However, the constitution is not so limited. It allows any citizen to compel observance or restrain violations through injunctive or mandamus proceedings. As the majority aptly points out, Michigan has long recognized the availability of preliminary injunctions. Those injunctions are necessarily issued through injunctive proceedings.

Like the trial court, the Court of Appeals recognized that irreparable harm to every citizen occurs simultaneously with a constitutional violation. It wrote:

> Defendant next argues that no injunction should have been ordered where plaintiffs failed to demonstrate that they would suffer irreparable injury if the injunction was not issued. It argues that "a bare allegation of constitutional violation fails to demonstrate irreparable harm." We disagree because Const 1963, art 11, § 5 specifically provides that "violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state." As a matter of first impression, we believe that this language is a constitutional declaration that a violation of Const 1963, art 11 § 5, in itself, amounts to irreparable harm supporting injunctive relief.[3] [236 Mich App 96, 106; 600 NW2d 362 (1999).]

In light of these statements by the courts below, I believe it clear that the problem the majority finds is not with the failure to address the existence of irreparable harm,

---

[3] The Court of Appeals did say that an "additional" showing of irreparable harm was unnecessary, but it first found that the threatened harm would be irreparable because of the alleged constitutional violation.

but with the idea that the irreparable harm caused by a violation of Const 1963, art 11, § 5 may be remedied by preliminary injunctive proceedings brought by any citizen rather than only by citizens affected in some way peculiar from the rest of the populace.  I agree with the courts below and believe that the majority's approach is contrary to the language and purpose of the constitution.

## II

The majority acknowledges that the lower courts stated that a constitutional violation amounts to irreparable harm, but nonetheless concludes that neither court required a finding of the requisite irreparable harm.  Specifically, the majority writes:

> Critical to the issue presently before this Court, the trial court opined in its oral ruling on the preliminary injunction motion that a showing of "some particularized injury or damage" was *not* necessary to obtain a preliminary injunction against an alleged violation of Const 1963, art 11, § 5.  The trial court stated that "if a violation of [§ 5] occurs, my reading is that would be irreparable harm, not just to the Plaintiffs, but to every citizen of the state."  Slip op at 3-4.

Similarly, with respect to the Court of Appeals opinion, the majority writes:

> While it may have been more clearly stated, the emphasized language indicates that "a bare allegation of a constitutional violation" *is* sufficient to show irreparable harm.  In other words, the Court of Appeals concluded that a showing of irreparable harm to a particular party is not required for a preliminary injunction

8

> against an alleged violation of § 5. [Slip op at 6,
> emphasis added.]

While I agree with the majority that the courts below said that a constitutional violation is equivalent to irreparable harm, I do not agree with the conclusion that the courts "in other words" implied that harm to an individual party need not be shown.  Rather, in my view, the courts below "in other words" said that every individual citizen is irreparably harmed by a constitutional violation.  I am at a loss to understand how the Court's statement that *these* plaintiffs would suffer irreparable harm can simultaneously be a conclusion that the plaintiffs need not show that they themselves would suffer irreparable harm.  The majority makes the mistake of reading the trial court opinion as providing that any citizen can bring suit by saying, "I can bring suit for all of us, because society as a whole is harmed by a violation of Const 1963, art 11, § 5."  In my view, the trial court decision actually provides that a violation of Const 1963, art 11, § 5 injures each citizen individually.  As such, every citizen may institute injunctive or mandamus proceedings.  Thus, under the trial court opinion, any plaintiff bringing suit would be constitutionally authorized to allege "I will be hurt individually because of the

9

violation."[4]

Interestingly, the majority concludes:

> [S]tanding has been described as a requirement that a party ordinarily must have a substantial personal interest . . . as opposed merely to having a generalized interest in the same manner as any citizen. . . . It is this requirement that unquestionably is targeted by § 5 when it provides that "violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of this state." Slip at 7-9.

Despite the fact that the aforementioned constitutional language mentions neither standing nor the requirements for a preliminary injunction, the majority reaches the conclusion that particularized injury is suspended for the purposes of coming before the Court, but once there, particularity is reintroduced in association with the requirement that irreparable harm be shown. In other words, under the majority's approach, anyone can come before the court to seek an injunction, but if the person cannot show the type of particularized harm that would normally be required for standing purposes, then they cannot obtain relief in the form of a preliminary injunction. The effect of such an approach is to completely destroy the power of "any citizen" to compel constitutional compliance.

---

[4] In any event, this issue relates to the question of standing, as will be further explained.

10

The constitutional language does not provide only that injunctive proceedings may be brought by any citizen. It additionally says that a violation may be restrained or observance compelled by any citizen. Yet, under the majority view, only a citizen whose job will be adversely affected by a decision of the commission may restrain the violation by preliminary injunctive proceedings. Thus, in the context of preliminary proceedings, the protection afforded to "any citizen" of this state effectively becomes a protection afforded to a limited class of citizens. I cannot support an approach that allows all citizens with valid legal claims regarding a constitutional violation to institute legal proceedings, but which nullifies the purpose of those proceedings by making preliminary injunctive relief per se unavailable to a large percentage of those citizens despite the contrary purpose and language of our constitution.

I believe that the problem created by the majority approach stems in part from the fact that the majority injects particularity into its analysis of irreparable harm, rather than limiting the question of particularity to the standing context. The generally accepted analysis used in preliminary injunction cases considers four factors:

> harm to the public interest if an injunction issues, whether the harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted; the strength

11

of the applicant's demonstration that the applicant is likely to reveal on the merits; and demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted. [*MSEA v Dep't of Mental Health*, 421 Mich 152; 365 NW2d 93 (1984).]

The focus of the four-factor analysis is on the type of injury rendered by the issuance or nonissuance of an injunction. In the context of issuing injunctions, irreparable injury has special meaning under the law. The injury is traditionally defined in terms of whether the injury can be repaired by means other than through the issuance of an injunction.[5]

Although it is true that the *MSEA* test and the tests applied in various cases cited by the majority refer to injuries to the "plaintiff" or to the "complainant," the references are fairly unremarkable since it is always the complainant who seeks redress of an injury. Also, in an injunction case involving subject matter not governed by a constitutional provision such as Const 1963, art 11, § 5, the complainant will have had to prove particularity in order to establish standing. What is remarkable, however, is the fact that the majority offers no authority for the proposition that a plaintiff must show that the harm he suffers is somehow

---

[5] For example, Black's law dictionary provides the following explanation, "'Irreparable injury' justifying an injunction is that which cannot be adequately compensated in damages or for which damages cannot be compensable in money." Black's Law Dictionary (6th ed), p 786.

12

irreparable in a different way than it is irreparable to any other plaintiff. The reason, in my view, is that the "requirement that a party ordinarily must have a substantial personal interest at stake in a case or controversy as opposed merely to have a generalized interest in the same manner as any citizen,"[6] pertains to standing and not to the question whether a party will suffer irreparable harm.[7] Here, Const 1963, art 11, § 5 specifically confers standing on all citizens.

For all these reasons, I believe that the majority opinion is erroneous and that its reasoning fails to support its conclusion. I prefer the reasoning and holding of the trial court. I would, therefore, affirm the recognition by the courts below that irreparable harm may be established by

---

[6] Slip op at 6-7.

[7] As was recently recognized by a majority of this Court in *Lee v Macomb Co*, 464 Mich ___; ___ NW2d ___ (2001), the type of particularized harm referenced by the majority is clearly a requirement of the standing doctrine. As noted previously, no similar particularity requirement is required as part of the irreparable harm inquiry. However, even if I agreed with the majority that particularity is required in the context of irreparable harm, as explained at length in this opinion, I believe it is inconsistent to conclude that the people of the state of Michigan intended to suspend the requirement of particularized harm for the purpose of allowing citizens to enter the courtroom door, but nonetheless those citizens must afterward show the very type of particularized, concrete harm suspended for standing purposes in order to receive a preliminary injunction.

13

proof of a violation of Const 1963, art 11, § 5, and hold that the trial court did not abuse its discretion.

WEAVER and KELLY, JJ., concurred with CAVANAGH, J.